Filed 9/30/13  N.G. v. Superior Court CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| N.G.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MENDOCINO COUNTY,<br><br>     Respondent;<br><br>MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>     Real Party in Interest. | A139037<br><br>(Mendocino County Super. Ct. Nos. SCUK-JVSQ-13-16062 & SCUK-JVSQ-13-16063) |

Petitioner N.G. (mother) seeks review of a juvenile court order scheduling a hearing pursuant to Welfare and Institutions Code[1] section 366.26 for her children K.G. and J.G.  The mother contends there was insufficient evidence to support a supplemental petition under section 387, to demonstrate the previous placement order was not effective, to justify removal of the children from her custody, and to bypass reunification services under section 361.5, subdivision (b)(13).  We deny the petition.

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

## FACTUAL AND PROCEDURAL HISTORY

In August 2010, the Mendocino County Health and Human Services Agency (agency) filed a petition alleging that the mother's two-year-old daughter K.G. and 12-month-old son J.G. came within the jurisdiction of the juvenile court pursuant to section 300, subdivision (b).[2] The petition was filed in response to an incident in which the children were found at a neighbor's house after being left with the father's sister, who in turn brought the children to a family friend, who ultimately left the children with the neighbor. When the father was located, he did not want to come home because he had been drinking alcohol and did not want his children to see him in that condition. When the mother arrived home, she was intoxicated and claimed to have been in Lake County for two days with friends.

The juvenile court declared K.G. and J.G. wards of the court after finding true allegations that neither the father nor the mother was sober and available to care for the children, that the father had an alcohol problem inhibiting his ability to parent, and that the father got overwhelmed in caring for the children when the mother would leave the home for days at a time. The court dismissed without prejudice an allegation that the mother had an alcohol problem that inhibited her parenting ability on the condition that she agreed to submit to random drug testing and attend Alcoholics Anonymous and Al-Anon. At the disposition hearing, the court adopted a modified case plan that required the mother to attend Al-Anon twice a week and to submit to random urine testing but omitted the requirement of attending Alcoholics Anonymous. A stated objective of the case plan was for the mother to "[s]tay sober and show [the] ability to live free from alcohol dependency." The court placed the children with the mother and ordered family maintenance services for the mother and reunification services for the father.

On March 15, 2011, the agency filed a supplemental petition pursuant to section 387 seeking a more restrictive placement for the children. In an amended section 387

---

[2] Because the father has not challenged the order setting a section 366.26 hearing, our focus is upon the facts relating to the mother.

petition, the agency alleged that the mother had been using methamphetamine, marijuana, and alcohol. The agency also alleged that the mother had failed to participate in case plan activities and had failed to comply with court orders. Specifically, it was alleged that the mother had disobeyed a court order to undergo an immediate drug test, had failed to attend court-ordered parenting classes, and had only minimally participated in court-ordered Family Empowerment Groups. It was further alleged that the mother had failed to notify her social worker of individuals who lived in her home, transported her children to school, and allowed the children to stay overnight at their homes. The court ordered the children detained at a hearing conducted on March 17, 2011. The court found the allegations of the amended supplemental petition true at a jurisdiction hearing conducted in April 2011. At the disposition hearing, the court placed the children in the custody of the agency and ordered reunification services for the mother. As part of her updated case plan, the mother was required to participate in and successfully complete a substance abuse treatment program at Alcohol and Other Drug Programs (AODP).

The mother did not appear in court for a 30-day substance abuse treatment review in June 2011. The agency informed the court that the mother had failed to contact AODP. At a 60-day substance abuse treatment review hearing, the social worker reported that the mother had not checked into AODP and had missed drug testing the previous week. In August 2011, the mother was found eligible and suitable for Family Dependency Drug Court (FDDC). Her revised case plan required her to participate in and successfully complete FDDC.

As reflected in a status report filed in October 2011, the mother began attending FDDC in August 2011. It was reported that she had been arrested for battery on her husband in June 2011. The mother was not conscientious about keeping the social worker informed as to where she had been living and had not participated in individual therapy or parenting classes. Further, she did not participate in a drug test in July 2011 and did not come to a scheduled visit with her children. At the conclusion of the October 2011 review hearing, the court ordered the mother to receive six more months of reunification services.

3

A further status review hearing was conducted in March 2012. At the time, it was reported that the mother has missed a drug test in December 2011 and had received 14 "sanctions" in FDDC, "mostly for not showing to AODP or calling when she was ill." She had advanced to Phase 4 of the FDDC program. The social worker opined that the mother had made very good progress, with a documented length of sobriety of eight months. In addition, she had obtained adequate housing, had stabilized her marriage, and was expecting another baby in March 2012. Based upon the recommendation of the social worker, the juvenile court ordered the children returned home to their parents and directed them to receive family maintenance services.

Following the return of the children to the mother, she tested positive for methamphetamine in June 2012. The social worker did not recommend removal of the children but sought a stern warning that the mother had already received 12 months of reunification services for children who were under three years of age when originally removed from the home.

In the report prepared for an August 2012 review hearing, the social worker reported the mother was testing clear of all drugs and alcohol since her relapse in June 2012. The mother had made progress in parenting groups and began attending anger management classes. The social worker reported that the parents' relationship was tumultuous at times, with the mother stating they were separating one week and getting back together the next. The parents had participated in services offered by the agency but did not attend regularly. The social worker made it clear that the mother and the father had already received 12 and 18 months of reunification services, respectively, and that they needed to remain aware that they must make sufficient progress in resolving the problems that led to the dependency. The court adopted the findings and orders recommended by the agency, continued family maintenance services, and modified the mother's case plan to include anger management or domestic violence treatment as decided in conjunction with the social worker and therapist.

In a report prepared for the February 2013 status review hearing, the social worker reported that the mother was currently in Phase 4 of the FDDC program and was

struggling to complete the program. In 2012, she had been ordered to return to Phase 3 after failing to show up for a drug test. She advanced to Phase 4 in November 2012 and then to Phase 5 of the FDDC program in December 2012. However, she was ordered back to Phase 4 in January 2013 after testing positive for marijuana (THC). Neither parent appeared in court for the status review hearing in February 2013. The minors' counsel expressed concern that the father's conduct was putting the mother's sobriety in jeopardy. The court adopted the findings and orders recommended by the agency and set a review date for July 2013.

In March 2013, the agency filed a supplemental petition under section 387 as to the father, alleging that his use of alcohol while caring for the children put them at serious risk of harm. The court detained the children from the father.

In April 2013, just over two years after filing the first supplemental petition as to the mother, the agency filed a second section 387 supplemental petition regarding the mother. The agency alleged that the mother's use of alcohol while caring for her children put them at risk of serious harm. The detention report prepared by the agency described an incident on March 29, 2013, in which the mother was arrested following a domestic altercation with the father. The mother resisted arrest, kicked a police officer, and refused to get into the back of a patrol car. Although the children were not present for the domestic altercation between the parents, they were present for the mother's subsequent arrest. The mother had a blood alcohol content of 0.127 percent at the time of the arrest. She was charged with domestic battery and resisting arrest for the March 2013 incident.

At the detention hearing, the mother's counsel objected to detaining the children, arguing that there were "protect[ive] measures put in place when she was drinking." Her counsel claimed there were "appropriate persons" present to care for the children. Both counsel for the agency and counsel for the minors requested detention of the minors, with the minors' counsel citing the mother's long history of substance abuse. The court ordered K.G., J.G., and their younger sibling, G.G., detained.

In a jurisdiction report filed on April 10, 2013, the social worker indicated that rule 5.565(f) of the California Rules of Court applied to both parents in that the mother

and the father had already received 12 and 18 months of reunification services, respectively.[3]  The agency did not recommend offering additional reunification services and requested the setting of a hearing pursuant to section 366.26.  The mother's counsel filed a brief in support of dismissing the allegations, arguing that K.G. and J.G. came under the court's jurisdiction with respect to the mother because she left the children with inappropriate caregivers in the past.  Counsel argued there was no evidence the persons who were taking care of the children at the time of the mother's March 2013 arrest were inappropriate.  Counsel also argued the first supplemental petition was sustained based on the mother's use of marijuana and methamphetamine, whereas the most recent allegations involved the use of alcohol.  The agency opposed the motion to dismiss the allegations and filed an addendum report stating that the oldest child, K.G., had witnessed her mother being arrested while under the influence of alcohol.  K.G. had told the social worker that she saw her mother screaming after her mother was handcuffed.  She also stated that three policemen pushed her mom into a car and "socked her in the neck."

At the jurisdiction hearing on the second section 387 petition as to the mother, the mother testified that she was feeling overwhelmed on March 29, 2013, and purchased alcohol to drink.  She admitted arguing with her husband but denied striking him.  She bought and consumed more alcohol after the confrontation with her husband.  She testified that she "did kind of kick and scream" when she was arrested because she felt she was being charged for something she did not do.  The mother claimed she was not alone with the children at any point when she was intoxicated and that there were sober people present.  The mother's boyfriend testified that he was present on the evening of March 29, 2013, and had not been drinking.  The boyfriend acknowledged that he was

---

[3]  Rule 5.565(f) of the California Rules of Court provides:  "If a dependent child was returned to the custody of a parent or guardian at the 12-month review or the 18-month review or at an interim review between 12 and 18 months and a 387 petition is sustained and the child removed once again, the court must set a hearing under section 366.26 unless the court finds there is a substantial probability of return within the next 6 months or, if more than 12 months had expired at the time of the prior return, within whatever time remains before the expiration of the maximum 18-month period."

supposed to submit to a background check with the agency but had not done so. The mother's cousin also testified and stated that he was present with the children on the evening of March 29, 2013. He testified that he was sober that evening and had been asked by the mother to watch the children because she had been drinking. The cousin stated that he had been asked to provide his fingerprints to the agency for a background check but had failed to do so. The social worker testified that she had attempted to do a background check on the cousin but could not do so without a social security number or a fingerprint. Her attempt to do a background check based solely on the cousin's name and birthdate had turned up a lengthy criminal history. At the conclusion of the jurisdiction hearing, the court found the allegations of the section 387 supplemental petitions true as to both the mother and the father. The court set a disposition hearing for June 13, 2013.

In the report prepared for the disposition hearing, the social worker stated that the mother was subject to bypass for further services under rule 5.565(f) of the California Rules of Court because she had received 12 months of reunification services from March 17, 2011, to March 13, 2012. The report also indicated that the mother was subject to bypass for reunification services based upon section 361.5, subdivision (b)(13), in that she had a history of extensive, abusive, and chronic use of drugs or alcohol and had failed or refused to comply with a program of drug or alcohol treatment in the preceding three-year period. In the summary evaluation, the social worker stated that the mother had a history of "acting out" her anger. Also, the mother had been involved in the dependency case for close to three years as of August 2013. She reasonably knew she must remain sober in order to keep her children safe but had not done so over time and consistently relapsed every six months or less, "keeping her forever in FDDC." The report stated that the mother had received at least 18 months of family maintenance services and 12 months of reunification services.

At the disposition hearing in June 2013, the court found clear and convincing evidence that there was a substantial risk of harm to K.G. and J.G. as a result of the mother's recent relapse. The court expressed concern not only about the use of alcohol but also the "serious incident of acting out while drinking . . . with the children around."

7

The court adopted the agency's proposed findings and orders, denied reunification services to the mother pursuant to section 361.5, subdivision (b)(13), and set the matter for a permanency planning hearing pursuant to section 366.26 as to K.G. and J.G. The mother timely sought writ review of the court's orders with respect to K.G. and J.G. under rule 8.450 of the California Rules of Court. The mother's counsel also filed notices of appeal from the same orders.[4]

## DISCUSSION

### I. *Standard of review.*

Our review of a challenge to the sufficiency of the evidence is guided by familiar principles. "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) All conflicts must be resolved in favor of the respondent and all legitimate inferences must be indulged in support of the juvenile court's findings. (*Ibid.*) The party challenging the finding bears the burden of showing there is insufficient evidence to support the juvenile court's finding. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.) The substantial evidence standard also applies to findings that must be made by clear and convincing evidence. (See *In re Henry V.* (2004) 119 Cal.App.4th 522, 528-529.)

---

[4]  In her writ petition, the mother requests that we consolidate her writ with the appeals. We decline to do so. Section 366.26, subdivision (*l*) bars direct appeals from orders setting a section 366.26 hearing. (See *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 816-817; *In re Charmice G.* (1998) 66 Cal.App.4th 659, 667-668.) The proper disposition is to dismiss the appeals. (*Ibid.*) We observe that, although the mother filed notices of appeal in the juvenile court, the notices were apparently not transmitted to this court (other than as part of the record in this writ proceeding). Consequently, there are no pending appeals in this court from the order setting a section 366.26 hearing as to K.G. and J.G. Insofar as the mother sought to appeal from the juvenile court's order setting a section 366.26 hearing as to K.G. and J.G., those purported appeals are dismissed.

**II.** *Substantial evidence supports the court's finding that the previous disposition had not been effective in protecting K.G. and J.G.*

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. [Citations.] In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. [Citations.] If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. [Citations.] A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. [Citations.] The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161; see also § 387; Cal. Rules of Court, rule 5.565(e); *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1200.)

The mother contends there was insufficient evidence to support a finding that the previous disposition had not been effective in protecting the children. She argues that the prior petitions alleged that she left the minors with inappropriate caregivers and used marijuana and methamphetamines. She claims that the incident on March 29, 2013, involved neither leaving the children with inappropriate caregivers nor the use of illicit drugs. Consequently, she claims the previous disposition was effective in addressing the issues giving rise to the dependency. She further claims there was no evidence the children were placed at risk at any time.

We disagree with the mother's characterization of the March 2013 incident, which raised many of the same concerns underlying the original dependency petition as well as the 2011 supplemental petition. The initial incident that brought the children within the jurisdiction of the juvenile court involved the mother being absent from the home and intoxicated. One of the objectives of her case plan was to remain sober and live free from alcohol. Although the mother's use of drugs precipitated the filing of a section 387

9

supplemental petition in 2011, the agency alleged in the supplemental petition that the mother had been using alcohol as well as methamphetamine and marijuana. Thus, her abuse of alcohol remained a concern, and her case plan retained the objective of remaining alcohol-free as well as free from drugs. Plainly, the prior disposition was ineffective in preventing the mother from abusing alcohol and putting her children at risk. Further, despite her claim that she left the children with sober and responsible caregivers, the evidence before the juvenile court was that the boyfriend and cousin whom the mother had entrusted with the children had failed to undergo background checks as requested by the agency. A consistent theme in the dependency proceedings was that the mother failed to notify the social worker of persons who cared for or otherwise had contact with the children at home. Consequently, the March 2013 incident raised many of the same concerns that triggered the dependency proceedings in the first place.

The mother cites *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, for the proposition that a risk of harm to a child must exist at the time of the jurisdiction hearing to support a jurisdictional finding. She claims she was intoxicated on only one occasion in March 2013 and was not under the influence of drugs or alcohol at the time of the jurisdiction hearing. The mother takes a much too narrow view of *Rocco M.*, which clarifies that past conduct may be probative of current conditions if there is reason to believe the problematic acts will continue in the future. (*Ibid.*) Here, given the mother's past history of drug and alcohol relapses, there is reason to believe the March 2013 incident was not an isolated occurrence.

The mother's reliance on *In re Drake M.* (2012) 211 Cal.App.4th 754 is similarly misplaced. In that case, the Court of Appeal concluded there was insufficient evidence to support a jurisdictional finding that the father's use of medical marijuana caused the minor to be at risk of substantial physical harm. (*Id.* at p. 769.) The court reasoned that mere use of medical marijuana did not demonstrate that the father had a substance abuse problem or that the child was placed at risk of harm. (See *id.* at pp. 763-769.) Here, by contrast, the mother had a substance abuse problem involving both alcohol and drugs, as the court had previously recognized. Further, unlike in *Drake M.,* the mother's substance

10

abuse problem placed the children at risk of harm. Not only did she leave the children with persons who had not been subjected to background checks, as required by the social worker, but she also exposed at least one of her children to her involvement in a violent, drunken episode with the police.

It must be recognized, too, that *Drake M., supra,* involved an initial jurisdictional finding at the inception of the dependency process. In this case, the court had already assumed jurisdiction over the minors years ago. "The law does not require that a fact necessary to establish jurisdiction under section 300 be established to warrant a change in placement" under section 387. (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.) Rather, once the juvenile court assumes jurisdiction over a child, it has greater authority to intervene in order to protect the child. (*Ibid.*) The pertinent question in a section 387 proceeding is whether the previous disposition has been effective in protecting the minor. We conclude there was sufficient evidence to support a finding that the previous disposition was ineffective in protecting K.G. and J.G.

**III.**    *Substantial evidence supports the order removing the children from the mother's custody.*

The mother next contends that, even if there was sufficient evidence to sustain the supplemental petition, there was insufficient evidence to support the order removing the children from her custody. We disagree.

In order to remove a child from parental custody under a section 387 supplemental petition, the juvenile court must make the same findings as those necessary to remove a child from parental custody at the initial disposition hearing under section 361. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462.) Thus, before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, that there is a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents . . . ." (§ 361, subd. (c)(1); *In re Javier G., supra,* at p. 462.) "A removal order is proper if it is based on proof of (1) parental inability to provide

11

proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate." (*In re T.W., supra,* 214 Cal.App.4th at p. 1163.)

The record in this case supports a finding that the mother was unable to provide proper care for K.G. and J.G. and that they would be at risk of harm if they remained in her custody. At the time of the section 387 disposition hearing in June 2013, the mother had almost three years of family maintenance and reunification services, including participation in the FDDC program, therapy, anger management classes, and other services. In spite of these services, the mother had established a poor track record of remaining sober and staying away from drugs. She had multiple relapses involving methamphetamine, marijuana, and alcohol. The March 2013 incident involved a relapse with alcohol and was yet another occasion on which she left the children with caregivers either unknown to the agency or who had failed to submit to background checks. Further, the oldest child was exposed to a violent episode involving her intoxicated mother when the police attempted to arrest the mother. Under the circumstances, removal of the children from the mother's custody was supported by clear and convincing evidence.

The facts in *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, on which the mother relies, are distinguishable. In that case, the minor remained in his mother's care after being declared a dependent based on the mother's "inability to care for him due to mental illness and/or alcohol abuse." (*Id.* at p. 1071.) Pursuant to a section 387 petition, the juvenile court removed the minor from the mother's custody after the mother arrived 20 minutes late to pick up the child from school. (*Id.* at pp. 1075, 1079.) The Court of Appeal concluded there was insufficient evidence to support a removal order, reasoning that "[a] single instance of parental tardiness in retrieving a child from a supervised setting does not pose a substantial risk of harm to the child and is not an uncommon occurrence." (*Id.* at p. 1079.) In contrast to the facts in *Kimberly R.,* the mother in this case was, in fact, intoxicated at the time of the March 2013 incident. Her

behavior upon being arrested could not be described as a common experience to anyone that might have witnessed it, including her daughter K.G.  Further, the March 2013 episode was not an isolated incident but was instead part of a pattern of drug or alcohol relapses, some of which involved violent behavior or leaving the childen with inappropriate caregivers.  Simply put, the facts underlying the March 2013 incident bear little resemblance to the single instance of parental tardiness described in *Kimberly R.*

**IV.**   ***The juvenile court did not err in denying further reunification services to the mother.***

Finally, the mother argues there was no clear and convincing evidence to support a finding that she should be bypassed for further reunification services under section 361.5, subdivision (b)(13).  We are not persuaded.

Section 361.5, subdivision (b)(13) provides in relevant part that the juvenile court need not provide a parent or guardian with reunification services if the court finds by clear and convincing evidence "[t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . ."

Although the mother does not dispute that she has a history of extensive, abusive, and chronic use of drugs and alcohol, she argues there has been no showing she resisted treatment because she voluntarily participated in the various programs offered to her.  The Court of Appeal faced a similar claim in *Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006.  There, although the parent voluntarily sought out treatment programs, the evidence established the parent never had a significant period free from substance abuse.  (*Id.* at p. 1009.)  The court concluded the parent resisted treatment within the meaning of the statute "by failing to benefit from treatment for his chronic use of illicit drugs and alcohol."  (*Ibid.*)  In interpreting the meaning of the word "resist," the court observed that resistance can be either active or passive.  A parent can "passively resist by participating in treatment but nonetheless continuing to abuse drugs or alcohol, thus demonstrating an inability to use the skills and behaviors taught in the program to

13

maintain a sober life." (*Id.* at p. 1010.) Here, just as in *Karen S.,* the evidence shows passive resistance by the mother to court-ordered treatment. As evidenced by the multiple instances of relapse, the mother repeatedly demonstrated an inability to use the skills taught to her in various treatment programs to maintain a sober and drug-free life. Consequently, there was substantial evidence to support the court's order denying reunification services to the mother under section 361.5, subdivision (b)(13).

### DISPOSITION

The petition for extraordinary relief is denied on the merits. (§ 366.26, subd. (*l*)(1)(C); *Kowis v. Howard* (1992) 3 Cal.4th 888, 893-895.) Our decision is final immediately as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)


_____
McGuiness, P. J.


We concur:


_____
Pollak, J.


_____
Jenkins, J.

14