Filed 4/8/14  T.C. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| T.C., | |
| Petitioner, | E060188 |
| v. | (Super.Ct.Nos. J242318, J242319 & J245195) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cheryl C. Kersey, Judge.  Petition denied.

Valerie Ross for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for Real Party in Interest.

1

Petitioner T.C. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging orders entered at a combined hearing for status review and jurisdiction and disposition on a Welfare and Institutions Code[1] section 387 supplemental petition. A juvenile court removed mother's three children from her custody and set a section 366.26 hearing. Mother contends there was no clear and convincing evidence that there would be a substantial danger to the children if left in her custody. She thus argues that the children should be returned to her care under a plan of family maintenance. We deny her writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2012, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of mother's 16-month-old son and two-year-old daughter (the children). The petition alleged that the children came within the provision of section 300, subdivision (b) (failure to protect). The petition alleged that mother had a substance abuse problem that affected her ability to parent, and that she placed the children at risk of harm by allowing her boyfriend, C.C., who had an extensive criminal background, to reside in the home.[2]

In a detention report, the social worker reported that the children came to CFS's attention when C.C. was arrested on a felony warrant for possession of

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] The petition also contained allegations regarding the children's father (father). However, since he is not a party to this writ, we will not mention those allegations.

2

methamphetamine, and mother was arrested for aiding a wanted felon and child endangerment. When the police went to the residence, they found that the home had drug paraphernalia and knives within reach of the children. Mother was eventually released from police custody, with no charges filed against her.[3] The social worker further reported that mother was four months' pregnant with C.C.'s child. However, mother told the social worker she would no longer have contact with C.C. When asked if she used illegal substances, mother said she quit using methamphetamine three months prior. The court detained the children in foster care, authorized CFS to assess relatives for placement, and ordered no contact between the children and C.C.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on January 23, 2012, recommending that the children be returned to mother's custody with in-home court supervision. The social worker reported that mother had no criminal or drug abuse history, that she moved herself and the children into an apartment, and that she was actively seeking full-time employment.

At the jurisdiction/disposition hearing, the court ordered mediation to address the allegations, case plan, and visitation. The jurisdiction/disposition issues were resolved at mediation with mother signing a waiver of rights. A full agreement was reached between mother and CFS that the allegation concerning substance abuse would be dismissed, and that the court would find true the other allegation, amended as follows: "Mother

---

[3] The record does not explain what happened with C.C. after this arrest.

3

demonstrated poor judgment in the choice of her boyfriend which placed the children at risk due to his criminal behaviors." As to the disposition, mother and CFS agreed that the children would return to mother's custody under a family maintenance plan, and that mother would participate in counseling and a parenting program. On March 3, 2012, the court declared the children to be dependents of the court and returned them to mother's custody on a plan of family maintenance.

*First Section 387 Petition Regarding the Children and Section 300 Petition Regarding I.C.*

On July 20, 2012, the social worker filed a section 387 supplemental petition for a more restrictive placement. This petition alleged that, on or about July 18, 2012, mother was arrested and incarcerated on drug and child endangerment charges, leaving the children with no provisions for support or care. In the detention report, the social worker reported that both mother and C.C. were arrested when the police, acting on a search warrant, entered their residence and found drugs within reach of the children. The police had information that drugs were being used and sold in the residence. Mother admitted that she used methamphetamine the day of her arrest and that she recently started allowing C.C. to come to the home. The social worker stated that it appeared C.C. had moved back in with the family. The social worker reported that he had an extensive criminal history, which included convictions for carrying a concealed weapon, possession of a firearm, possession of a controlled substance for sale, driving under the influence, inflicting corporal injury on a spouse/cohabitant, and willful cruelty to a child. He also had previous charges for murder, robbery, and burglary, and pending charges for

4

unlawful possession of ammunition, possession of a controlled substance, and false imprisonment.

On July 20, 2012, the social worker also filed a section 300 petition with regard to I.C., who was the two-month-old child of mother and C.C. This petition alleged that I.C. came within the provisions of section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition alleged that mother had substance abuse problems, that she placed I.C. at substantial risk of harm by allowing C.C. to reside in the home knowing his criminal behaviors, and that mother was incarcerated.[4]

At a detention hearing on July 23, 2012, the court detained all three children in foster care.

Subsequently, mother pled guilty to possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and willful cruelty to a child (Pen. Code, § 273a, subd. (b)). The trial court placed her on formal probation until July 23, 2016, under certain conditions.

At a further detention hearing on July 25, 2012, mother denied the allegations in the section 387 petition. The court found that the children came within section 387 and that detention out of the home was necessary.

*Jurisdiction/disposition*

The social worker filed a jurisdiction/disposition report regarding all three children on August 10, 2012. The social worker reported on July 18, 2012, when the police

---

**4** This petition also contained allegations concerning C.C. Since he is not a party to this writ, we will not mention those allegations.

entered mother's home, mother and the three children were in the master bedroom, and there were drugs on the counter within the children's reach. The police also found methamphetamine pipes throughout the home, marijuana in the backyard next to the children's toys, and syringes. The social worker opined that the three children remained at risk due to mother's continued drug usage, and she believed they may have suffered, or could suffer, abuse and/or neglect.

On October 3, 2012, mother signed a waiver of rights and pled no contest to the allegations in the petitions. As to the two older children, the matter was set contested by their father, and the hearing was continued. As to I.C., the court found true the allegations in the section 300 petition and found that she came within section 300, subdivisions (b) and (g). The court declared I.C. a dependent of the court and maintained her in foster care.

At a contested jurisdiction/disposition hearing on November 13, 2012, the court found that the two older children came within section 387 and that the previous disposition had not been effective in protecting them. The court continued them as dependents and removed them from mother's custody. The court ordered mother to participate in reunification services with regard to both dependency cases.

*Twelve-month and Six-month Status Reviews*

On February 28, 2013, the court held a 12-month status review with regard to the two older children. The court found that mother had made progress in her case plan and ordered her to continue with her services. The court authorized unsupervised visitation

and weekend visits. At the six-month status review hearing regarding I.C., the court made the same orders.

*Eighteen-month Status Review Regarding the Older Children*

The social worker filed an 18-month status review report regarding the two older children and recommended that they be returned to mother's custody under a plan of family maintenance. Mother had completed her court-ordered programs and had clean drug tests. The social worker believed the children were not at substantial risk of being abused or neglected; however, there was concern that mother was still unstable in her living situation.

On June 27, 2013, the court held a hearing and found that mother's progress had been substantial, but conditions that justified the initial assumption of jurisdiction still existed. The court continued the children as dependents, returned them to mother's custody, and ordered mother to participate in family maintenance services.

*Second Section 387 Petition for the Two Older Children and 12-month Status Review for I.C.*

The social worker filed a second section 387 petition on September 30, 2013, alleging that, despite receiving months of reunification services and family maintenance services, mother had not alleviated the cause of the removal of her children and had not made substantive progress in her case plan. The social worker filed a detention report and recommended that the children be removed from mother's custody and detained in CFS's custody again. The social worker reported that mother missed several random drug tests. Furthermore, after the children were returned to her custody in June 2013, she

7

moved several times without keeping the social worker informed. When the social worker went to contact her and the children on July 23, 2013, the house was empty and the landlord said the family had moved. According to I.C.'s paternal grandmother, C.C. had been released from custody about one week prior and was living with her. She said that mother was "kinda sorta" living with them, as well. However, when the social worker was able to make contact with mother, she said that she lived with her father.

On August 8, 2013, the social worker met with mother and C.C. C.C. wanted to know what he needed to do to see his daughter, I.C. C.C. was told he could have visits supervised by CFS or its delegates, and that his mother was also authorized to supervise his visits. After that meeting, mother and C.C. showed up for visits with I.C. two weekends in a row without the paternal grandmother. I.C.'s caretaker was informed that they would only be visiting every other weekend, since the family (mother, C.C., and the two older children) had moved to Las Vegas. The social worker later received a voicemail from mother with a land line phone number in Las Vegas. Mother subsequently left a voicemail for the social worker stating that she was "checking in" and wanted to know when her case could be transferred to Las Vegas. She provided the social worker with their address in Las Vegas.

On September 19, 2013, the social worker went to I.C.'s paternal grandmother's home. Mother and C.C. arrived at the home and told the social worker they were only visiting I.C. every other weekend. Mother asked if I.C. could go to Las Vegas for the weekend if the paternal grandmother was there to supervise. The social worker told her that she was not to take I.C. out of the state, and that the two older children could not be

living in another state with an open dependency case.  Also, the social worker asked mother if she had taken the children to the doctor to have their eyes checked, since something was noticeably wrong with them.  Mother said that she had, and that the doctor said nothing was wrong with her son's eye, and her daughter's eye just needed a patch.  The social worker asked mother to provide medical documentation, but mother did not do so.

On September 25, 2013, the social worker spoke with mother and told her to bring the children into the probation office the next morning for her to see them.  Mother appeared the next morning without the children.  She said they were with her aunt in Indio.  Mother then admitted to her probation officer that she had used drugs the day before.  Mother was arrested for a probation violation.

The social worker opined that the safety of the children was at risk due to mother's continued chaotic living situation, her taking of them to live in another state without permission, her failure to follow up with medical care for their eyes, and her return to her abusive boyfriend, C.C.  The social worker was concerned about the type of environment the children were being exposed to, and the care they were receiving.

On October 1, 2013, the court once again detained the children in foster care.  The court found that they came within section 387 and that the previous disposition of maintaining them in mother's custody had not been effective.

*Jurisdiction/disposition on the Second Section 387 Petition and 12-month Review for I.C.*

The social worker filed another jurisdiction/disposition report regarding the two older children on October 22, 2013. The social worker reported that mother had not completed her family maintenance services. The social worker asserted that mother had failed to gain the skills necessary to remain sober and free of drugs. Mother was aware that C.C. had a drug problem, which included using and selling, yet she became involved in that relationship again. The social worker recommended that the court set a section 366.26 hearing and consider terminating parental rights.

The social worker also filed a 12-month status review report regarding I.C. and recommended that a section 366.26 hearing be set to establish a plan of adoption.

After various continuances, the court held a combined hearing for the 12-month status review and jurisdiction/disposition on the section 387 supplemental petition. At the hearing, mother testified that she went to Las Vegas on September 21, 2013, to visit C.C., and she took her two older children with her. She said she got permission from the social worker to take them there. She also said the social worker was "on board" with her plan to reconcile with C.C. and eventually move to Las Vegas. Mother admitted that she violated her probation by going to Las Vegas. She realized that she was in violation and wanted to report herself to her probation officer. Prior to going to her probation officer, she took the children to her aunt's house in Indio, with the plan that the aunt would keep them if she was taken into custody. She said that her aunt had already been approved for placement by CFS. Mother was subsequently taken into custody. Mother further

10

testified that, at the time of the hearing, she was still on probation, on house arrest. She also testified that, as part of her case plan, she completed drug counseling/outpatient program, and she never relapsed after that.

The social worker testified that mother was already living in Las Vegas, although she said she was only going there to visit. Mother was also asked to drug test numerous times and failed to appear. The social worker testified that mother admitted to relapsing into drug use in September 2013. She opined that there would be no benefit in continuing services for mother because of her chronic drug use, her constant moving, and the instability in her housing situation. The social worker also noted that mother violated her probation by going to another state. The social worker explained that she did attempt to work with mother and C.C., since they said they wanted to get back together. She met with them and the paternal grandmother to come up with a plan for them to drug test and begin some counseling. The paternal grandmother was authorized to supervise their visits with I.C.; however, mother and C.C. started showing up for visits without her. Thus, CFS ended up filing the section 387 petition regarding the older children.

After hearing all the testimonies, the court noted that it did not find "mother's testimony by any standard to be credible." The court found true the allegation in the section 387 petition that mother had not alleviated the cause of the removal of the older children and had not made substantive progress in her case plan. The court further found that the previous disposition had not been effective and that there would be a substantial danger to the health and safety of the children if they were returned to mother's custody. The court concluded that it was in the best interests of the two older children to consider

termination of parental rights at a section 366.26 hearing. As to I.C, the court found that there was no substantial probability for I.C. to be returned to mother's custody and that it was also in her best interests to consider termination of parental rights. The court set a section 366.26 hearing for April 3, 2014.

## ANALYSIS

### *The Court Properly Sustained the Section 387 Petition and Removed the Two Older Children From Mother's Custody*

Mother argues that removal of the two older children from her custody was not warranted since she had made arrangements for their care during her "short incarceration," and she was out of custody by the time of the section 387 hearing. She also contends there was no clear and convincing evidence that there was a substantial danger to the children if returned to her custody. Thus, mother essentially claims that the court improperly removed the children from her custody, pursuant to the section 387 petition. We disagree.[5]

We note that, although mother names I.C. as one of the subjects of the writ petition, she fails to raise any issues regarding I.C. Thus, any references to "the children" will refer to the two older children only.

A. *Applicable Law*

Section 387, subdivision (a), states: "An order changing or modifying a previous order by removing a child from the physical custody of a parent . . . and directing

---

[5] The first issue mother actually raises in her writ is that she is entitled to writ review. However, such issue is conceded. Thus, no discussion is needed.

12

placement in a foster home . . . shall be made only after noticed hearing upon a supplemental petition." The substantive requirements of the section 387 petition are set out in subdivision (b) of section 387: "The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child . . . ." (See also *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1199 (*Joel H.*).) In other words, CFS "'has the burden to show by a preponderance of the evidence that the factual allegations alleged in the petition are true. If the court finds the factual allegations are true, then the court determines whether the previous disposition is no longer effective in protecting the child . . . .' [Citation.]" (*In re A.O.* (2010) 185 Cal.App.4th 103, 109-110 (*A.O.*).)

Section 387 does not require the same jurisdictional findings demanded under section 300, which authorizes the juvenile court's initial jurisdiction over the child. "'The ultimate "jurisdictional fact" necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor.' [Citation.]" (*A.O.*, *supra*, 185 Cal.App.4th at p. 110.) The juvenile court need not find that there has been physical or emotional abuse. (*Joel H.*, *supra*, 19 Cal.App.4th at p. 1200.) Rather, the goal "is to protect the child from some perceived danger or actual harm." (*Id.* at p. 1201.)

"We review an order sustaining a section 387 petition for substantial evidence. [Citation.]" (*A.O.*, *supra*, 185 Cal.App.4th at p. 109.) We will therefore affirm the jurisdictional findings if examination of the record, reviewed as a whole and in the light

13

most favorable to the order, discloses evidence that is "reasonable, credible and of solid value," which would allow a reasonable trier of fact to make the pertinent findings. (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078.)

B. *There Was Substantial Evidence to Support the Removal Order*

The second section 387 petition alleged that, despite receiving family maintenance services and reunification services, mother had not alleviated the cause of the removal and had not made substantive progress in her case plan. There was substantial evidence to support these allegations, as well as the conclusion that the previous order placing the children with mother was no longer effective for their protection. The children were initially declared dependents when the court found true the allegation that mother demonstrated poor judgment in the choice of her boyfriend, C.C., and thereby placed the children at risk, in light of his criminal behaviors. His extensive criminal history included convictions for carrying a concealed weapon, possession of a firearm, possession of a controlled substance for sale, driving under the influence, inflicting corporal injury on a spouse/cohabitant, and willful cruelty to a child. The court allowed the children to stay in mother's custody under a family maintenance plan, which included participation in counseling and a parenting program. However, the court subsequently removed the children from her custody, pursuant to the first section 387 petition, after mother was convicted of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and willful cruelty to a child (Pen. Code, § 273a, subd. (b)) and placed on probation. At that time, the court ordered mother to participate in reunification services.

14

After mother had made progress in her case plan, the court returned the children to her custody on a family maintenance plan, once again.

The court thereafter removed the children from mother's custody a second time, pursuant to the current section 387 petition. The evidence showed that mother did not complete her family maintenance services, and she relapsed and used methamphetamine. The evidence also showed that mother had moved several times without keeping the social worker informed, and she most recently moved to Las Vegas. Although mother testified at the hearing that she was living in Apple Valley, the evidence showed that she had left the social worker a voicemail from Las Vegas, gave a Las Vegas address, and asked that her case be transferred to Las Vegas. Furthermore, the evidence showed that the week after C.C. was released from custody, mother was living *with him*. She also took the children to live in Las Vegas with him, despite the social worker telling her they could not live in another state with an open dependency case. Thus, mother violated her probation and disregarded the social worker's warnings. In sum, despite all the services she had received, mother relapsed in her drug use, and she continued to demonstrate poor judgment by reconciling with C.C. and bringing the children to live with him in Las Vegas. In other words, the children were back in the same situation that prompted CFS to initiate the dependency in the first place. Clearly, the court's previous decision to return the children to mother's custody had not been effective in protecting the children. Thus, the court properly removed them from mother's custody, pursuant to the second section 387 petition.

Mother contends that the standard for removal of a child from parental custody on a section 387 petition is the same as for removal on an original petition under section 300—that is, there must be clear and convincing evidence that there was a substantial danger to the children if returned to her custody. (§ 361, subd. (c)(1).) She then asserts that there was no such evidence. Contrary to her claim, "section 387 does *not* expressly require application of section 361, subdivision (c)(1)." (*A.O.*, *supra*, 185 Cal.App.4th at p. 111, italics added.) In any event, the court here made a determination under section 361, subdivision (c)(1), when the children were initially removed from mother's custody, at the jurisdiction/disposition hearing on November 13, 2012. Furthermore, at the jurisdiction/disposition hearing on the second section 387 petition, the court explicitly found that clear and convincing evidence showed that the children should be removed from mother's custody, and that there would be a substantial danger to their health and safety if returned to her custody. As discussed *ante*, substantial evidence supported these findings.

Mother also claims that the social worker's complaints about her reconciling with C.C. and moving the children to Las Vegas to live with them were "disingenuous" since the social worker met with her, C.C., and the children to work out a plan for the family. At the hearing, the social worker explained that she did attempt to work with mother and C.C.; however, when they did not comply with the provision that visits be supervised, the social worker decided to file the section 387 petition.

Finally, mother points out that when she anticipated being taken into custody for violating her probation, right before the section 387 petition was filed, she dropped the

children off with her aunt, who had been approved for placement.  Mother asserts that "there was no mention in the report or at the hearing that [she] lacked authority to place the children with anyone else while [she] was in custody."  However, the court had not previously ordered the children placed with mother's aunt.  Additionally, mother was only granted temporary physical custody over the children in June 2013, and she had no authority to make decisions regarding their placement.  (*A.O.*, *supra*, 185 Cal.App.4th at p. 111.)  In any event, whether or not mother was able to arrange for the care of the children upon her arrest was irrelevant to the proceedings on the section 387 petition. (*Ibid.*)

DISPOSITION

The writ petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

17