Filed 10/1/14  In re Samuel C. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re SAMUEL C., a Person Coming Under the Juvenile Court Law. | B251062 |
| | (Los Angeles County Super. Ct. No. CK38827) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| JASMA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Amy Pellman, Judge.  Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and John C. Savittieri, Deputy County Counsel for Plaintiff and Respondent.

Appellant Jasma G. (mother) appeals from the juvenile court's findings and orders establishing dependency jurisdiction over her son Samuel (born March 2013), removing him from her custody, and denying her family reunification services pursuant to Welfare and Institutions Code section 361.5, subdivisions (b)(10), (11), and (13).[1] We affirm the juvenile court's orders.

## BACKGROUND

### Detention

The Department of Children and Family Services (Department) received a referral regarding newborn Samuel in March 2013. The reporting party expressed concern for Samuel's safety because mother was not compliant with her case plan in another dependency case involving older half-siblings I. and A.

On April 3, 2013, the Department asked mother and Samuel's father, Samuel C. (father),[2] to submit to an on-demand drug test. Mother tested negative for drugs and alcohol but father tested positive for cocaine.

On April 24, 2013, the Department learned that mother had been arrested on April 16, 2013, for theft and second degree commercial burglary while Samuel was with her. After her arrest, mother telephoned father, who arrived at the scene and took custody of Samuel. Mother was subsequently incarcerated. On April 25, 2013, mother and father consented to the Department's detention of Samuel.

Mother had a prior criminal history that included a July 2000 conviction for theft, a May 2002 conviction for carjacking, January and April 2007 convictions for driving under the influence, a September 2009 conviction for disorderly conduct, a November 2012 conviction for petty theft, and a February 2012 conviction for driving under the influence and for driving with a suspended or revoked license.

---

[1]   All subsequent statutory references are to the Welfare and Institutions Code.

[2]   Father is not a party to this appeal.

At the April 30, 2013 detention hearing, the juvenile court found a prima facie case for detaining Samuel from the custody of both parents and ordered him detained in foster care.

**Mother's prior child welfare history**

Mother had five other children -- I., A.,[3] Ar. (born July 1998), John (born December 1999), and Javon (born October 2001) -- who had been removed from her custody. Mother was receiving reunification services for I. and A., who were placed in foster care. She failed to reunify with Ar., John, and Javon, and her parental rights were terminated as to those three children.

The Department's April 30, 2013 detention report included the allegations of the section 300 petitions the juvenile court had previously sustained on behalf of I. and A., Ar., John, and Javon. The petition sustained in May 2012 on behalf of I. and A., stated that mother and the children's father, I. W., had endangered the children by leaving them home alone for two days without parental supervision; that mother had a history of drug and alcohol use, a history of convictions for driving under the influence, was a recent abuser of alcohol and recently tested positive for PCP; and that mother failed to protect the children from I. W., who physically disciplined them by striking their hands.

The sustained petition filed on behalf of Ar. stated that mother and John J., Sr. engaged in violent physical altercations while in the child's presence, that John J., Sr. had a history of substance abuse and was a daily user of marijuana and alcohol, that both parents failed to provide Ar. with basic necessities and necessary medical care when the child exhibited signs of failure to thrive, and the home was found to be in a filthy, unsanitary condition.

The sustained petition filed on behalf of John stated that mother and John J., Sr. engaged in domestic violence, that mother failed to comply with prior court orders to participate in domestic violence counseling and parenting classes, that the home was found to be in a filthy, unsanitary and unsafe condition, littered with trash, illicit

---

[3]   The record does not include dates of birth for I. and Amilion.

3

substances, and drug paraphernalia, and that the problems that had led to the removal of sibling Ar. remained unresolved. The April 30, 2013 detention report noted that the juvenile court had terminated parental rights as to Ar. and John on December 21, 2001.

The sustained petition filed on behalf of Javon stated that mother and John J., Sr. were incarcerated and had left the child in the care of the paternal grandmother, despite the fact that both parents were aware that the grandmother was an ongoing user of cocaine. The petition further stated that both parents had a history of domestic violence in the presence of Javon, that they failed to obtain necessary medical treatment for the child, that they failed to reunify with older siblings Ar. and John, and failed to comply with prior court orders for drug treatment, testing, parenting and domestic violence counseling. The April 30, 2013 detention report noted that parental rights were terminated as to Javon on August 19, 2004.

**Section 300 petition**

On June 4, 2013, the Department filed an amended section 300 petition[4] on behalf of Samuel, alleging, under subdivision (b), that mother placed Samuel in a detrimental and endangering situation by committing the crime of burglary while the child was in her care and supervision, that father had a history of illicit drug use, was a current abuser of cocaine, and had a recent positive toxicology screen for cocaine while Samuel was in his care and supervision, that father had a criminal conviction for inflicting corporal injury on a spouse/cohabitant on February 7, 2013, and that mother had a history of drug and alcohol use and was a recent abuser of alcohol, and that she had a history of convictions for driving under the influence. The petition further alleged, under subdivisions (b) and (j), that siblings I. and A. were current dependents of the court due to their parents' substance abuse; that mother was not in compliance with her case plan as to those children; and that mother's parental rights had been terminated as to siblings Ar., John, and Javon.

**Jurisdiction/disposition**

---

[4] A previous petition filed on April 30, 2013, was dismissed.

Mother remained incarcerated at the time of the Department's June 4, 2013 jurisdiction/disposition report. In an interview with the social worker, mother denied being arrested for burglary and claimed she had been arrested for petty theft and violation of probation. She denied knowledge of father's drug use.

Mother's arrest report indicated that a loss prevention officer at the Vallarta Market observed mother place several items, including a 12-pack of beer, into a shopping bag. One-week old Samuel was with mother at the time. The loss prevention officer stopped mother from exiting the store after she failed to pay for the items. Mother was subsequently arrested and transported to the Sheriff's station in Palmdale.

The Department's social worker reported that she had spoken with Arlene Moeller, the child social worker (CSW) assigned to I.'s and A.'s case. According to CSW Moeller, mother was not in compliance with her case plan objectives of completing a substance abuse program and random drug testing.

The Department recommended that mother be denied family reunification services based on her failure to reunify with Ar., John, and Javon after the juvenile court sustained allegations for domestic violence, substance abuse, and failure to provide; her concurrent case with I. and A. based on allegations of substance abuse, physical abuse; and neglect, and her extensive criminal history and risky behaviors related to substance abuse.

At the June 4, 2013 adjudication hearing, mother was appointed new counsel, who requested a continuance. Counsel represented that mother was enrolled in programs and wanted to know whether she could drug test for the Department while in custody. The juvenile court continued the hearing and ordered the Department to issue a supplemental report addressing the parents' progress in programs and to investigate mother's ability to drug test while in custody.

In an addendum report dated August 5, 2013, the Department reported that mother telephoned CSW Moeller on a weekly basis with an update on her progress in programs. Mother stated that she was enrolled in parenting classes, drug and alcohol treatment, 12-step meetings with a sponsor, and counseling. The Department was in the process of

verifying mother's participation in those programs and her ability to drug test while in custody.

In a last minute information for the court filed on August 5, 2013, the Department's social worker reported that she had spoken with Officer Graham from mother's detention facility about mother's progress in programs. Officer Graham stated that mother was enrolled in parenting and life skills classes as well as narcotics anonymous meetings but that she had been discharged from these programs on June 26, 2013, due to inappropriate behavior. Officer Graham did not have any additional information concerning the reasons for mother's discharge.

**Adjudication hearing**

At the August 5, 2013 adjudication hearing, the juvenile court took judicial notice of the previously sustained petitions and admitted into evidence the amended petition in the instant case; the Department's jurisdiction and disposition report and its attachments, which included the April 30, 2013 detention report; the August 5, 2013 addendum report; and the August 5, 2013 last minute information for the court.

Mother's counsel noted that there was a discrepancy between what mother had reported about her participation in programs and the information in the Department's most recent report. Counsel said she was ready to proceed with the adjudication hearing and that she wished to call CSW Moeller as a witness to testify but had been informed that Moeller no longer worked for the Department. The juvenile court found Moeller was unavailable and proceeded with the hearing.

Mother testified that she was enrolled in programs and had spoken with CSW Moeller on a weekly basis concerning her progress. Mother further stated that CSW Moeller had been emailed a certificate of completion for a 180-hour parenting and life skills program she completed on June 19. Mother denied being discharged from her programs for inappropriate behavior and stated that she was currently enrolled in programs for narcotics and alcoholics anonymous, anger management, and life skills. Mother admitted that she had not completed any programs before her current incarceration.

6

Father testified and denied ingesting cocaine or any other drug. When asked about his failure to appear for drug testing, father said he was unaware that he was required to test for drugs. Father also denied engaging in domestic violence but admitted that he had been convicted of inflicting corporal injury on a former girlfriend.

After hearing argument from the parties, the juvenile court found to be true the allegations of the petition under section 300, subdivision (b) that (1) mother placed Samuel in a detrimental and endangering situation by committing the crime of second degree commercial burglary while the child was in her care and supervision; (2) father's positive toxicology screen for cocaine and illicit drug use endangered Samuel and placed him at risk of harm; (3) father's criminal conviction for inflicting corporal injury on a spouse or cohabitant while father's child was present endangered Samuel and placed him at risk of harm; (4) siblings I. and A. are current dependents of the juvenile court because of their parents' substance abuse and that mother was not in compliance with the case plan which included completing a substance abuse program as to those children, and that siblings Ar., John, and Javon were prior dependents of the juvenile court because of domestic violence, substance abuse, failure to obtain medical care, and an unsanitary home and that mother's failure to comply with court orders resulted in the termination of her parental rights; and (5) mother has a history of driving under the influence of alcohol or drugs and a recent unresolved history of drug and alcohol use and is a recent abuser of alcohol, rendering her incapable of providing regular care and supervision and placing Samuel at risk of harm. The juvenile court also found true the allegations under section 300, subdivision (j) mother's noncompliance with her case plan as to siblings I. and A., who were current dependents of the juvenile court, and the termination of mother's parental rights with respect to Ar., John, and Javon, placed Samuel at risk of harm.

The juvenile court amended the allegations of the June 4, 2013 petition to be consistent with its findings and sustained the petition as amended. The court then declared Samuel a dependent of the court and ordered him removed from the parents' custody. The court accorded father family reunification services but denied services to mother, addressing her as follows:

7

"I'm going to deny mother's family reunification services today. This court has given the mother many chances. We had a very long time in April. This court was extremely clear with you, Ma'am, as to what you needed to do and why you needed to do it, and you did not do it. And the court actually believes that you have not made reasonable efforts by clear and convincing efforts. I am talking to you that you have not made reasonable efforts to address the problems that led you to the removal of your children. Before you were incarcerated, you missed tests. You stopped going to drug program. The only programs you've ever gone to was when you were court-ordered or incarcerated. I've never seen you do anything on your own. And when you were court-ordered, it's not consistent. You had four no shows. Before you ended up being incarcerated and you committed a crime again. That shows me that you are not listening to the programs. And you are again putting your one-week-old baby at risk of harm. I hope you do your programs, but at this point, it is not the obligation of the Department to help you or for us to spend government funds on reunification. It is up to you. So if you want to do it, please do it."

When mother's counsel asked the statutory basis for denying mother reunification services, the juvenile court responded that it was doing so pursuant to section 361.5, subdivisions (b)(10), (11), and (13).

This appeal followed.

## DISCUSSION

### I. Standard of review

We review the juvenile's court's jurisdictional and dispositional orders under the substantial evidence standard. (*In re David M.* (2005) 134 Cal.App.4th 822, 828; *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078.) Under this standard, we review the record to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, resolve all conflicts in the evidence, and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

### II. Jurisdictional challenge

Mother contends there was insufficient evidence to support the court's jurisdictional findings under section 300, subdivisions (b) and (j)[5] with regard to siblings I., A., Ar., John, and Javon because the Department failed to offer into evidence any portion of the siblings' case files other than the prior sustained petitions. She argues there was no evidence to show that mother's parental rights were terminated as to any children or that she failed to comply with any prior court orders.

The Department's April 30, 2013 detention report, May 31, 2013 addendum report, and June 4, 2013 jurisdiction/disposition report describe in detail mother's prior dependency court history. The reports state that mother's parental rights were terminated as to siblings Ar., John, and Javon, who were removed from her care due in part to mother's substance abuse, and that those children were subsequently adopted. The reports also state that siblings I. and A. were current dependents of the juvenile court in part because of mother's substance abuse. The May 31, 2013 report states that mother was receiving reunification services as to I. and A., but she was not in compliance with her case plan. The June 4, 2013 jurisdiction disposition report includes a summary of a conversation between the Department's dependency investigator in the instant case and CSW Moeller, the social worker assigned to I. and A.'s case. According to Moeller, mother had not complied with her case plan objectives of completing a substance abuse treatment program and random drug testing and Moeller therefore intended to recommend termination of mother's reunification services.

---

[5] The subdivision (b) and (j) allegations sustained by the juvenile court that is the subject of mother's jurisdictional challenge both state: "The child, Samuel['s] siblings I. [] and A. [] are current dependents of the juvenile court due to the parent's substance abuse, leaving the children alone for two days and physical abuse. Mother is not in compliance with the current case plan including completing a substance abuse program as to these children. Further, the child Samuel['s] biological siblings Armuntre [], John [], and Javon [] were prior dependents of the juvenile court due to the parents' domestic violence, substance abuse, failure to obtain medical care and an unsanitary home. Mother failed to comply with the court orders and her parental rights were terminated. Such conduct on the part of the child's mother endangers the child's physical health and safety and places the child at risk of physical harm, damage and failure to protect."

9

The foregoing reports are substantial evidence that at the time of the adjudication hearing in this case, siblings I. and A. were dependents of the juvenile court as the result of mother's substance abuse, that mother was not in compliance with her case plan as to those children, and that mother's parental rights had been terminated as to siblings Ar., John, and Javon, after she failed to reunify with them. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 74-76, 77.) Mother never objected to the admission of these reports into evidence and waived any argument that they do not constitute admissible evidence. (§ 355, subd. (b); Cal. Rules of Court, rule 5.684(c).)

## III. Denial of reunification services

Substantial evidence also supports the juvenile court's order denying mother reunification services under section 361.5, subdivisions (b)(10) and (b)(11).

Under section 361.5, subdivision (b)(10), the court may deny reunification services to a parent if reunification services have previously been terminated for any of the child's siblings or half-siblings due to the parent's failure to reunify with them, and the parent has subsequently failed to make a reasonable attempt to remedy the problems that led to the sibling's or half-sibling's removal.

Section 361.5, subdivision (b)(11) permits the juvenile court to deny services if the court finds evidence "[t]hat the parental rights of a parent over any sibling or half sibling of the child had been permanently severed" and the "parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling."

Reunification services may be denied to a parent under section 361.5, subdivision (b)(13) when the court finds, by clear and convincing evidence, "[t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought the child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

The same evidence that supports the juvenile court's jurisdictional findings as to mother's history with siblings Ar., John, Javon, I. and A. also supports the juvenile court's denial of reunification services under section 361.5, subdivisions (b)(10), (11), and (13).  (*In re Jasmine C., supra*, 70 Cal.App.4th at pp. 74, 77.)  The Department's social worker's reports were substantial evidence that mother's parental rights were terminated as to Ar., John, and Javon after she failed to reunify with them; that I. and A. were current dependents of the juvenile court as the result of mother's substance abuse; and that mother failed to comply with her case plan requirements as to those children for random drug testing and completion of a substance abuse program.

In addition, there was undisputed evidence that mother had a history of drug and alcohol abuse, including multiple convictions for driving under the influence, and that she had a positive drug test for PCP in 2012.  There was also evidence that mother resisted prior court ordered treatment by failing to comply with her case plan requirements for I. and A. for random drug testing and completion of a substance abuse program.  Mother admitted during her testimony at the adjudication hearing that she never completed any court ordered alcohol program.

Substantial evidence supports the juvenile court's conclusion that mother's circumstances came within subdivisions (b)(10), (11), and (13) of section 361.5.  The juvenile court did not abuse its discretion by denying mother reunification services.  (*In re Jasmine C., supra*, 70 Cal.App.4th at p. 76.)

## DISPOSITION

The orders establishing juvenile court jurisdiction over Samuel, removing him from mother's custody, and denying mother reunification services are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:

_____, P. J.
BOREN

_____, J.*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.