Filed 5/27/14  In re H.C. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re H.C., a Person Coming Under the Juvenile Court Law. | B250994 |
| | (L.A.S.C. No. CK44585) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| K.C., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed in part, and reversed and remanded.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant K.C, the mother of minor H.C., appeals from an order of the juvenile court that declared H.C. a dependent of the court under Welfare and Institutions Code section 300,[1] subdivision (b) based on a number of allegations relating to appellant's inadequate parenting skills as well as allegations that appellant had mental and emotional problems that led to her involuntary hospitalization. Before this court, appellant challenges the juvenile court's jurisdictional findings and disposition orders. She argues that the court erred in failing to grant the request of the Department of Children and Family Services ("DCFS") to continue the jurisdictional proceedings for two weeks in view of the DCFS's admission that it had not completed its investigation and was not prepared to make an assessment and recommendation to the court. The respondent asserts that appellant cannot complain about the court's failure to grant a continuance because she effectively objected to continuing the proceedings, and instead she urged the court to decide the merits. As we shall explain, we agree the appellant forfeit any complaint about the continuance. We also find that sufficient evidence supported at least one of the jurisdictional allegations. Nonetheless, we also conclude the court's disposition orders must be reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant came to the attention of the DCFS in February 2013, when a section 300 petition was filed on behalf of appellant (who was then 16 years old) and her siblings, alleging that appellant had been sexually abused by her stepfather and that her mother failed to protect her. Appellant, who was pregnant at the time, was detained in shelter care. DCFS was ordered to provide appellant with counseling and to assess relatives for placement.

Appellant gave birth to H.C. in March of 2013. After H.C.'s birth, appellant and the infant lived at St. Mary's Shelter. In early May 2013, the DCFS received a report that

---

[1]     All further code references, unless indicated otherwise, are to the Welfare and Institutions Code.

2

appellant was co-sleeping with H.C. even after the staff at the shelter had advised appellant of the dangers of co-sleeping with an infant. Shelter staff reported that in April 2013, appellant had agreed to a safety plan requiring her to stop co-sleeping with the baby, but nonetheless, appellant continued to do so. It was also reported that appellant had made verbal threats to the shelter staff; she did not support the baby's head and neck when she held the baby; and that appellant had spilled hot soup on the infant.[2]

When the DCFS social worker spoke to appellant she initially denied co-sleeping with H.C. but eventually admitted to a few incidents when appellant "was really tired." She also said she spilled soup on the baby by accident. She stated that the shelter staff would not hold the infant while she ate, so she had to eat while holding the baby. Mother denied being on medication or having a history of drug use, but admitted to "smoking marijuana before." Appellant agreed to a second safety plan requiring that she not co-sleep with the baby, or eat while holding the child.

Thereafter, the DCFS received a report that appellant had left H.C. strapped into a small baby swing at 8:45 p.m. while she visited a friend next door in the shelter. The next day, appellant was found sleeping on the couch with the baby lying across her chest. Later, appellant confronted a staff member about an incident between the staff member and another resident, and while holding H.C., appellant hit a wall with her fist. A few days later, it was reported that appellant put H.C. in a car seat in the front seat of a vehicle, and failed to secure the car seat when she went back into the shelter. When appellant returned, she told staff not to open the car door because the baby might fall out.

DCFS facilitated a Team Decision Making meeting ("TDM") on May 21, 2013. During the meeting the shelter staff indicated appellant had fallen asleep with the infant approximately 13 times. They also discussed her angry and defiant behavior, and appellant's inability to properly supervise and care for H.C. Appellant agreed to participate in individual counseling, and parenting classes, and to attend group therapy.

---

[2] The infant was taken to the emergency room, but did not sustain any injuries from the incident.

3

However, later that evening, appellant had another angry outburst and punched a wall while carrying the baby.

Thereafter, in early June 2013, St. Mary's shelter gave a seven-day notice to terminate placement with appellant and the baby because of appellant's aggressive behavior towards the shelter staff. It was further reported to DCFS that appellant had fed the baby a bottle of formula with baby food bananas in it, placed rice cereal in the child's formula, and gave the baby juice. In addition, shelter representatives reported that appellant was not properly holding the child.

On June 13, 2013, DCFS took the baby into protective custody. On June 18, 2013, the DCFS filed a section 300, subdivision (b) petition on behalf of H.C. The initial petition alleged that appellant had a history of substance abuse and co-sleeping with the baby, and that appellant's conduct placed the child at substantial risk of serious physical harm.

At the detention hearing on June 18, 2013, the court found the baby was a person described under section 300, subdivision (b), but released H.C. to appellant on the condition that appellant no longer co-sleep with the baby and receive hands-on parenting training. The court also ordered the DCFS to find a placement for appellant and the baby and to provide family maintenance services. During the hearing, appellant's counsel informed the court that appellant would "prefer not to waive time" on the case and to proceed to adjudication as soon as possible. Counsel also observed that because the child was released to the parent the adjudication should be held within 30 days. The court set the adjudication for July 10, 2013.

A week later on June 25, 2013, the court received an Ex Parte Application from the DCFS indicating that it had not found a placement for appellant and the baby, and therefore they were residing at the Children's Welcome Center. The application also noted that it was reported appellant was not caring for the baby during the night, and was trying to keep the baby awake all day in an effort to get the baby to sleep through the night. As a result, the baby had been distressed and was crying so much that the baby had sustained a hernia.

4

It was further reported that appellant was not properly feeding the baby, and did not know how to hold the baby while breast-feeding. The baby had also become sick and was prescribed medicine. The staff expressed concern that appellant would fail to administer the medication unless instructed to do so by an adult. The reporting party, whose identity is not disclosed in the report, also alleged appellant had been diagnosed with impulse control disorder, depression, post traumatic stress disorder ("PTSD"), anxiety, obsessive compulsive disorder, mood disorder, and attention deficit hyperactivity disorder ("ADHD"), but was not taking any medication.

The DCFS also received emails from staff at Children's Welcome Center indicating appellant was easily frustrated with the baby and combative with staff. The DCFS requested a Psychiatric Mobile Response Team ("PMRT") assess appellant's mental health status.

On June 24, 2013, the PMRT evaluated appellant and placed her on an involuntary hospital hold, pursuant to section 5585,[3] as being a danger to others, including the baby. Appellant was further evaluated at Exodus Urgent Care Center and it was determined she would be hospitalized for medication management and stabilization. Because of appellant's erratic behavior, the DCFS believed there was a substantial risk of danger to appellant's physical and/or emotional health, detained the child, and recommended she be placed in protective custody. Based on the DCFS's Ex Parte Application, the court detained H.C. in foster care, and granted appellant monitored visits.

On June 28, 2013, DCFS filed an amended section 300 petition to add allegations that appellant suffered from mental and emotional problems and had been involuntarily hospitalized. ~ (1CT 103, 105)~ Attached to the amended petition was a Detention Report dated June 27, 2013, in which DCFS recommended continued detention of the baby order to ensure her safety. On June 28, 2013, the juvenile court held a detention

---

[3]    Section 5585, known as the Children's Civil Commitment and Mental Health Treatment Act of 1988, allows a minor to be placed on a 72-hour hold for evaluation and treatment of mental disorders.  (§ 5585 et seq.)

5

hearing on the amended section 300 petition.  Appellant's counsel informed the court she had been released from the hospital.  The court found there was a significant risk of harm to H.C. in mother's custody, ordered the child detained in foster care and ordered the DCFS to make its best effort to place H.C. and appellant in the same location.

On July 8, 2013, the juvenile court received DCFS's Jurisdiction/Disposition Report.  In the report, DCFS stated that it had not yet completed its investigation and had been unable to obtain a statement from appellant for the Jurisdiction/Disposition Report due to difficulties arranging an interview.  As a result, DCFS stated: "[a]t this time the Department is unable to provide a full assessment and recommendations. . . .  Therefore, it is respectfully requested that the matter be trailed two weeks to allow the Department time to interview [appellant] and obtain any and all pertinent records related to the case."

On July 10, 2013, counsel for DCFS asked the juvenile court for a continuance to allow time for DCFS to conduct a more thorough investigation and to make some effective recommendations.  The juvenile court inquired, "Was this here on a no time waiver?"  Appellant's counsel replied, "Yes," and after an additional inquiry as to the date the time would expire, appellant's counsel noted that "we are at the time limit."  Without any additional discussion of the continuance at that point, the court then proceeded to admit the jurisdiction and disposition report, and asked appellant's counsel for his response to the information and concerns contained in the report about appellant's conduct.  Appellant's counsel responded:  "Well, your honor, I'd like to adjudicate the matter. . . . the Department, it is my position has not met its burden.  There's no evidence.  There's a report, your honor, but the report lacks hard evidence of any of the counts. . . ."

After appellant's counsel and the court discussed that there were "two units" set for the matter, appellant's counsel stated that he was "ready to go by argument, your honor."  DCFS's counsel then asked: "So the request for the continuance is denied?"  The juvenile court responded in the affirmative, and further explained: "This is a no-time-waiver.  I'm honoring that.  I believe that I'm duty bound.  I understand the Department has asked for a continuance and the ground is because the Department feels it needs more information."

6

The court then admitted the DCFS's reports into evidence and heard argument from counsel. The minor's counsel asked the court to dismiss the new allegations (§ 300, subd. (b)-(3)) in the petition for lack of evidence. Counsel pointed out that the jurisdiction and disposition report lacked evidence to support the allegations against appellant; that the purported "mental and emotional problems" were not identified with specificity; and that there was no diagnosis and no doctor's report or any evidence to demonstration the claims against appellant. The minor's counsel also complained that the DCFS had not complied with the court's original orders to place appellant and her child together and to provide appellant with assistance in parenting the child. The child counsel's agreed there was evidence supporting the original allegations that appellant had slept with the child, but that even those allegations did not support detaining the child in the first instance.

Appellant's counsel asked the court to dismiss the petition, noting the baby was released to appellant's custody with services when the original petition was filed. With respect to the allegation added in the amended petition, appellant's attorney argued it was "supported by no evidence, zero, no witness statements. It just says 'a reporting party - an anonymous reporting party.'" He added: "It's impossible for myself or minor's counsel to investigate this matter without knowing who to speak to, who to call to the stand, who to cross-examine. The mother has a right to cross-examine parties or witnesses that have been named in the report. We can't do that."

The juvenile court responded: "[Appellant's counsel], this started out with [counsel for DCFS]. . . asking for additional time . . . so that [DCFS] could interview witnesses and as you said obtain any and all pertinent records relating to the case. . . . So this is a no time waiver, what you requested. This is the situation we're in. We're dealing with the information [DCFS] has. I'm not going to allow you to have your cake and eat it too. I'm not going to allow you to say, 'we've got to move forward on this' and then argue, 'well, I don't have all the information I need' . . ."

7

The court sustained the amended section 300 petition,[4] declared H.C. a dependent of the juvenile court. The court then proceeded to the disposition and ordered H.C. removed from appellant's custody, and ordered the care, custody, and control of H.C. to be placed under DCFS supervision for placement in the approved home of a relative or nonrelative extended family member, ordered reunification services consisting of a hands-on parenting program and individual counseling to address case issues, and granted appellant monitored visitation.

---

[4]    The petition was sustained as follows: "b-1 [¶] On numerous prior occasions, the child, [H.C.]'s mother, [K.C.] placed the three month old child in a detrimental and endangering situation in that the mother continued to sleep with the child in a bed and sofa including falling asleep with the child in the mother's arms and chest. The mother continued to place the child in danger despite being told repeatedly by staff of the danger of sleeping with the child. On a prior occasion, the mother fed the child solid food. Such a detrimental and endangering situation established for the child by the mother endangers the child's physical health, safety and well being and places the child at risk of physical harm, damage and danger.

"b-2 [¶] The child, [H.C.]'s mother, [K.C.] has a history of substance abuse including marijuana, which renders the mother incapable of providing regular care of the child. The mother's substance abuse endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger.

"b-3 [¶] On numerous occasions, the [child's] mother has mental and emotional problems[,] including[] anger outburst[s] with staff at her placement and placement holding facility, including mother punching holes on the wall, and threatening staff by screaming at them while standing a couple of inches away from their face while holding child [H.C.] in her arms which renders the mother unable to provide regular care of the [child]. Further, on June 24, 2013, the child's mother was involuntarily hospitalized for evaluation and treatment of her psychiatric condition. Further, the mother has failed to take her psychotropic medications as prescribed. Due to the mother['s] mental health limitations, the mother is unable to provide regular care for the [child]. Such mental and emotional condition on the part of the mother endangers the child's physical and emotional health and safety and places the child at risk of physical and emotional harm and damage."

8

Appellant timely filed a notice of appeal.[5]

## *DISCUSSION*

Before this court appellant argues that sufficient evidence did not support the juvenile dependency court's jurisdiction findings and disposition orders. Before reaching the merits of those matters, however, we first turn our attention to an issue appellant has raised relating to the court's denial of the DCFS's request to continue the jurisdiction and disposition proceedings.

### A.    Request for a Continuance

After a dependency petition is filed seeking to have a child declared a dependent of the court, the juvenile court must set a jurisdictional hearing within a specified period. (§ 334 [jurisdictional hearing must be set within 30 days of filing of petition if children are not detained; if detained, within 15 court days of the date of the judicial order directing the children be detained]; Cal. Rules of Court, rule 1442(f).)

Thereafter, pursuant to section 352, a juvenile court may continue a hearing, including a jurisdictional hearing, on a showing of good cause and if the continuance is not contrary to the minor's interest. (See § 352, subd. (a).)[6] Except on a finding of

---

[5]    Orders from status review hearings in January and March 2014, disclose that the DCFS is investigating placement of H.C. with relatives out of state and that appellant has been residing in a group home.

[6]    Section 352 provides, in pertinent part: "(a) Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.

"Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. Neither a stipulation between counsel nor the convenience of the parties is in and of itself a good cause. Further, neither a pending criminal prosecution nor family law matter shall be considered in and of itself as good cause.

exceptional circumstances, when a minor has been removed from his or her parents'

custody, a juvenile court may not grant a continuance that would cause the dispositional

hearing to be completed over 60 days after the hearing at which the minor was ordered

remove or detained.  (§ 352, subd. (b).)[7]  The Legislature has recognized the existence of

"tension between the timely resolution of dependency cases and the thoughtful exercise

of judicial discretion."  (*In re Sean E.* (1992) 3 Cal.App.4th 1594, 1599.)   In some cases

the necessity for some delay may be unavoidable.  (*Ibid*.)  However, the discretion of the

juvenile court is limited by the general time constraints governing dependency hearings.

(*Id.* at p. 1598, fn. 4.)  In addition, if a parent or minor who is represented by counsel fails

---

Whenever any continuance is granted, the facts proven which require the continuance
shall be entered upon the minutes of the court. . . .  [¶]

"(b) Notwithstanding any other provision of law, if a minor has been removed
from the parents' or guardians' custody, no continuance shall be granted that would result
in the dispositional hearing, held pursuant to Section 361, being completed longer than 60
days after the hearing at which the minor was ordered removed or detained, unless the
court finds that there are exceptional circumstances requiring such a continuance.  The
facts supporting such a continuance shall be entered upon the minutes of the court.  In no
event shall the court grant continuances that would cause the hearing pursuant to Section
361 to be completed more than six months after the hearing pursuant to Section 319.

"(c) In any case in which the parent, guardian, or minor is represented by counsel
and no objection is made to an order continuing any such hearing beyond the time limit
within which the hearing is otherwise required to be held, the absence of such an
objection shall be deemed a consent to the continuance.  The consent does not affect the
requirements of subdivision (a)."

[7]     In *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1361, the jurisdiction hearing
was not held until almost nine months after the minors were detained and the disposition
hearing was not held until nearly a year after detention and more than 50 days after the
jurisdiction hearing.  In affirming the judgment, the Court of Appeal held there is no
requirement that the petition be dismissed if the time limits are not satisfied.  (*Id.* at p.
1362.)  The court concluded the limitations contained in subdivision (b) of section 352
"are not mandatory in the jurisdictional sense."  (*Ibid*.)

to object to an order continuing the dispositional hearing beyond the stated time limit, such failure is deemed consent to the continuance.  (§ 352, subd. (c).)

Here appellant argues that the dependency court erred in failing to continue the jurisdictional proceedings based on the DCFS's admission that it had not completed its investigation and was not prepared to make an assessment and recommendation. Appellant complains the juvenile court failed to appreciate its discretion under section 352 and that the court's proceeding with the jurisdictional hearing in light of these circumstances denied her due process and left her unprepared to defend against the petition.

The respondent maintains, however, that appellant forfeited any complaint about the court's failure to grant a continuance because she effectively objected to it.  Appellant counters that she did not "object" to the request for a continuance.  Rather, she asserts that she simply refused to waive the statutory time in which to proceed with the jurisdiction hearing.  She also maintains that pursuant to section 352, the dependency court had authority to continue the proceedings, notwithstanding her position on the issue.

Under section 352, the court has discretion to grant the continuance whether or not the parties agree to it.  (See § 352, subd. (a).)  The dependency court's comments here reflect its view that it lacked discretion to grant a continuance because appellant would not consent to it.  The court's view of the limits of its discretion is erroneous.   This conclusion does not warrant reversal of the court's orders, however.

Where, as here, a parent objects to a request for a continuance below, that parent cannot complain on appeal that dependency court denied the request.   In our view, appellant's comments amount to an implicit objection to the DCFS's request for a continuance.  Appellant's counsel's comments were more than an expression of her desire not to waive time in the proceedings.  Instead, they appear to reflect a strategic choice—to encourage the court to proceed without delay to adjudication in the hope that the court would dismiss the first amended petition as lacking in evidentiary support. After confirming to the court that the matter was on a "no time waiver," appellant's

11

counsel responded to the court's inquiry about the DCFS's new allegations in the first amended petition, saying: "I'd like to adjudicate the matter . . . . The Department it's my position has not met its burden. There's no evidence. There's a report, your honor, but the report lacks hard evidence of any of the counts. . . ." The DCFS pointed out that the DCFS had been unable to obtain certain statements and evidence. Appellant's counsel responded: "Unfortunately that's the Department's burden. The law is the law in terms as to time." Appellant's counsel then told the court that she was "ready to go by argument." Shortly thereafter when DCFS counsel inquired again whether the court had denied the request for a continuance, appellant's counsel remained silent.

Although in theory there may be a difference between refusing to waive time and objecting to a continuance, this was not a situation where counsel sought to make those distinctions. Appellant did not seek to preserve statutory time and at the same time acquiesce to the request for a continuance. Likewise, she did not inform the court that she was neutral on the issue or would take no position on the request. In contrast, appellant refused to "waive time" while urging the court to proceed immediately on the record before it to adjudication. Viewed in its context, appellant's conduct is tantamount to an objection to a continuance. Therefore, she forfeited her argument on appeal that the court erred in refusing to grant the DCFS's request to continue the jurisdictional proceedings.[8]

### B. Jurisdictional Findings

We review the jurisdictional findings for "any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [jurisdictional findings]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 [dispositional orders].) "Under the substantial evidence

---

[8]   In any event, even were we to agree with appellant that the court erred in failing to grant a continuance, the error is harmless. As we explain elsewhere in this opinion, sufficient evidence supported jurisdiction based on allegations in the petition under section 300, subdivision (b), count b-1, and we are reversing the dispositional order removing H.C. from appellant's custody.

rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748-749, fn. 6.) "Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its decisions for those of the trier of fact." (*In re Katrina C.*, *supra*, 201 Cal.App.3d at p. 547.) Under this standard, we review the evidentiary record in the light most favorable to the order. (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1135.)

At issue here is the juvenile court's assumption of jurisdiction under section 300, subdivision (b).[9] To warrant jurisdiction under that subdivision, there must be evidence of "three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk of such harm or illness.'" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

Here the court sustained allegations under section 300, subdivision (b), that appellant endangered H.C.'s health by: co-sleeping with the baby, and by feeding the infant solid food (count b-1); by abusing marijuana (count b-2); and because of her "mental health limitations," her emotional problems and angry outbursts at her placements towards the staff, her "involuntary hospitalization for evaluation and treatment of her psychiatric condition," and failure to "take her psychiatric medications as prescribed" (count b-3).

---

[9] That provision reads in pertinent part as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ." (§ 300, subd. (b).)

13

With respect to the allegations in counts b-1, we conclude there was sufficient evidence that appellant co-slept with the infant H.C. on numerous occasions even after she was instructed that doing so posed a grave danger to the baby's health, and that at least on one occasion appellant fed the baby solid food before the baby was three months old which also endangered the baby's health. Even though by the time of the jurisdictional hearing, there were no additional reports that appellant had continued to engage in the exact behaviors alleged in count b-1, these allegations must be viewed in the context of the interventions with appellant by the DCFS and the staff at her placements who attempted to work with appellant to correct her parenting behavior to no avail prior to court intervention. Although "the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm" (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824), a showing of prior harm is sufficient to support the initial exercise of jurisdiction under section 300, subdivision (b). (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1434-1439.) Indeed, the court may consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H., supra,* 82 Cal.App.4th at p.1135; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.) "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.) Thus, the court "must consider all the circumstances affecting the child, wherever they occur." (*Id.* at pp. 1048, 1049.) In light of all the circumstances, in our view, sufficient evidence supported the court's exercise of jurisdiction under section 300 based on the allegation in count b-1.

With respect to allegation b-2 in the petition, as the respondent correctly concedes, there was insufficient evidence to support a finding that appellant abused marijuana. There was no evidence presented in the record that appellant was a currently or regularly abused drugs. As a result, the allegations in the petition under section 300, subdivision b-2 must be stricken from the sustained petition.

Similarly, the evidence in the record before the court was not sufficient to sustain the new claims in the amended petition – the most serious of which related to appellant's behavior and mental instability, and her involuntary hospitalization alleged in b-3. The reports prepared by the DCFS lacked specific evidence about these matters. The reports contain no evidence describing appellant's conduct that led to her hospitalization and do not disclose the witnesses' knowledge about the situation. The reports contained no information as to appellant's diagnosis, treatment plan or prescribed medications before or after appellant's release from the hospital. Although the petition alleges that appellant failed to take her medication, there was no evidence in the record to support the claim. Indeed, the DCFS appreciated that its evidence was insufficient because it had not completed its investigation, and thus it did not provide an assessment or recommendation before the hearing. In view of the foregoing, we conclude that the court's findings on count b-3 cannot stand.

This notwithstanding, because as described elsewhere here, substantial evidence supports the section 300, subdivision b allegation in count b-1, the court properly exercised dependency jurisdiction under subdivision (b) of section 300. When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

### C.    Disposition Order

After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. At the dispositional hearing, the court must decide where the child will live while under the court's supervision. Before the juvenile court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical

15

health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ." (§ 361, subd. (c)(1)[10]; see *In re Heather A*. (1996) 52 Cal.App.4th 183, 193.) At the dispositional phase of dependency proceedings the burden of proof is clear and convincing evidence. (See § 361; *In re Sheila S.* (2000) 84 Cal.App.4th 872, 881.) "Whether the conditions in the home present a risk of harm to the child is a factual issue." (*In re N.M.* (2011) 197 Cal.App.4th 159, 170.) The court's dispositional finding is also subject to a sufficiency of the evidence standard of review. (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078.)

The court proceeded to the dispositional proceedings immediately after conducting the jurisdictional phase. The DCFS counsel pointed out that the DCFS had not made a disposition recommendation in its report. Both appellant and H.C.'s counsel asked that the court release H.C. to appellant or continue the disposition proceeding. Appellant and H.C.'s counsel argued that DCFS had not provided the "hands-on" parenting training previously ordered for appellant, nor had the DCFS made sufficient efforts to find a relative or foster care placement which would allow appellant and her baby to be placed together. Nonetheless, the court found by clear and convincing evidence under section 361, subdivision (c) that there would be a substantial danger if the baby were returned to appellant's care, that there were no reasonable means to protect the child absent removal and that the DCFS had made reasonable efforts to prevent or eliminate the need for the child's removal.

The court's dispositional orders must be reversed for several reasons. To be sure, the dispositional orders were premised on all of the jurisdictional allegations the dependency court found to be true. However, as we have concluded here, on the record before it, the exercise of dependency jurisdiction was proper only as to count b-1-relating

---

[10] The guidelines and limitations for removal of a child from the custody of the parents are set forth in section 361. Section 361 provides, in pertinent part: "(c) A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5) . . . ." (§ 361, subd. (c)(1).)

to the co-sleeping and feeding of H.C.  This allegation, standing alone, was not sufficient to support removal of H.C.  Indeed, earlier in the dependency proceedings after these same allegations arose and the court was made aware of them, the court nonetheless returned H.C. to the care of appellant, concluding that they did not warrant detaining the baby.  Instead, the circumstances alleged in b-1 obliged the DCFS to intervene to provide appropriate parenting education, individual counseling for appellant and to find a proper placement for appellant and H.C. together.  The DCFS did not show that it had complied with those court-imposed obligations—a fact which further undermines the disposition orders.  The DCFS did not present any evidence that it had made reasonable efforts to prevent or eliminate the need for removal.  It appears the DCFS never provided the court ordered hands-on parenting for H.C., and never found the family appropriate housing prior to removal of the baby from appellant's care.  Accordingly, the court's disposition orders cannot be affirmed.

### *DISPOSITION*

The disposition orders are reversed and the matter is remanded to the dependency court for a new disposition hearing.  At the disposition hearing the dependency court is directed to assess and consider evidence of the current conditions and living circumstances of H.C. and appellant.

On remand, the court is also directed to modify the jurisdictional order by striking the allegations contained in counts b-2 and b-3 of the petition.  The jurisdiction order is affirmed in all other respects.


**WOODS, J.**

**We concur:**



**PERLUSS, P. J.**                                                      **ZELON, J.**


17