Filed 4/12/16  In re W.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re W.L., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. M.L., Defendant and Appellant. | E063673 (Super.Ct.No. INJ1500093) OPINION |

APPEAL from the Superior Court of Riverside County.  William S. Lebov, Judge. (Retired judge of the Yolo Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Dismissed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant M.L.

1

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

M.L. (father) and M.C. (mother) are the parents of W.L. (sometimes child). When W.L. was born, both he and the mother tested positive for methamphetamine. The juvenile court found that it had dependency jurisdiction based on the mother's substance abuse and the father's failure to protect the child against the mother's substance abuse.

The father appeals. He contends that there was insufficient evidence to support the finding that the jurisdictional allegation involving him was true. We will hold that, because there is no question that the jurisdictional allegations involving the mother are true, and because the father has not shown any way he is likely to be prejudiced by the jurisdictional finding involving him, his contention is not justiciable and we must dismiss the appeal.

I

FACTUAL AND PROCEDURAL BACKGROUND

The father and mother dated for awhile. When the mother discovered that she was pregnant, they moved in together. In February 2015, W.L. was born. Both the child and the mother tested positive for methamphetamine.

When a social worker interviewed the mother, she insisted that the interview not take place in her hospital room, in part so it would not upset the father. She denied using drugs; she claimed that she tested positive because she had been in the presence of a friend who was smoking methamphetamine. She admitted having used

2

methamphetamine in the past, but she claimed she had stopped two years earlier. In September 2014, however, at a prenatal appointment, she had admitted that she was using drugs.

When the father was told that the mother had tested positive, "he displayed shock and disbelief." He "sobbed." He expressed concern about the possible effect on the baby.

The father admitted that while the mother was pregnant, he had twice found pipes in the home. However, when he confronted her, she told him that they belonged to a friend.

The father also admitted that the mother had "irregular sleep patterns" — she would stay up for two days straight, then sleep for a long time. She worked at home, making lamps. He had seen her "spending endless hours in her workspace at night, working on lamps." Her friends would come to the house late at night and "socialize" with her while he slept. However, when he talked to her about her sleep patterns, she said she had always had difficulty sleeping.

The mother and father agreed to a safety plan that called for the father to be "the primary caretaker." The mother remained in the home, but the father did not leave her alone with the child; he even took the child to work with him every day.

The mother refused to participate in a substance abuse program, claiming again that she was not using drugs, but she agreed to drug test. Thereafter, she tested positive

for methamphetamine.  She then admitted that she had been using drugs "off and on" for two years.

The father told the social worker that he had overheard the mother claiming that she knew how to beat a drug test.  He also told the social worker about an incident in which the mother "stumble[d] into their home," "clearly under the influence."  When she tried to take the child from his crib, he intervened and prevented her.

The father filed a custody proceeding in family law court.  On April 3, 2015, the family law court denied his ex parte application for custody, in part because the Department was already investigating the family.  It refused to rule until June 8, 2015, following mediation.  The father told the social worker that he was concerned that he did not have the legal right to restrict the mother's contact with the child.  At that point, the Department detained the child, placed him in the father's custody, and filed a dependency petition.  The mother went to stay with her parents.

At the detention hearing, the mother smelled of alcohol.  The Department requested a drug test; she tested positive for alcohol, with a blood alcohol level of 0.02 percent.  She claimed that she had merely had one glass of wine the night before.

When the social worker interviewed the father in preparation for the jurisdictional hearing, "[h]e reported that he finds raising [W.L.] to be a joy."

He admitted that, when he was dating the mother, he knew she used methamphetamine.  He claimed that, when he learned that she was pregnant, he agreed to

4

move in with her, on the condition that she "commit to quit using any substances in order to effectively care for the health of their child."

The father said his relationship with the mother was strained because she had not been honest with him about her drug and alcohol use. He conceded that, "[i]n retrospect," he should not have believed her explanations. He added, "[K]nowing what I know now, if the situation ever occurred again, I would immediately have her drug tested and removed from the presence of any child or children." His employer was still supportive of him taking the child to work. He was going to pay a housekeeper to clean his home thoroughly to make sure there were no drugs or drug paraphernalia.

At the jurisdictional/dispositional hearing, the juvenile court found the following allegations true:

"b-1 [T]he mother . . . gave birth to [W.L.], who had a positive toxicology screen for . . . methamphetamine; the mother risked the child's safety and physical well[-]being by consuming controlled substances prior to birth.

"b-2 The mother . . . continued to abuse controlled substances and . . . tested positive for . . . methamphetamines, thereby limiting her ability to provide supervision and protection for her child.

"b-3 The mother . . . has an unresolved history of abusing controlled substances including but not limited to marijuana and alcoholic beverages which limits her ability to provide supervision and protection for her child. [¶] . . . [¶]

5

"b-5  The father . . . knew or reasonably should have known that the mother was abusing controlled substances during her pregnancy as evidenced by the father's admission that he found two drug pipes, on two separate occasions, in their home.  The father's limited insight places the newborn at risk."  (Italics omitted.)

It therefore found that it had jurisdiction based on failure to protect.  (Welf. & Inst. Code, § 300, subd. (b)(1).)  It formally removed the child from the mother's custody and ordered that she be provided with reunification services.  It placed the child in the father's custody, subject to supervision by the Department, and ordered him to participate in family maintenance services.

## II

## JUSTICIABILITY

The Department contends that the validity of the b-5 allegation involving the father is not justiciable.

As a general rule, "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any

or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)[1]

"A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent."' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492; accord, *In re J.C.* (2014) 233 Cal.App.4th 1, 3-4; *In re Briana V.* (2015) 236 Cal.App.4th 297, 308-311.)

However, there are several exceptions to these principles: "Courts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for

---

[1] This rule is sometimes described as a matter of mootness. (E.g., *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489-1490.) It could also be viewed as a matter of standing. (See Code Civ. Proc., § 902 [appellant must be aggrieved].)

7

[the appellant], beyond jurisdiction" [citation].' [Citation.]" (*In re D.P.* (2015) 237 Cal.App.4th 911, 917.)

Here, the father does not challenge the dispositional orders, nor could he. The trial court left the child in his custody, subject to the supervision of the Department. It could have done the same thing based solely on the jurisdictional findings against the mother. (See *In re D.M.* (2015) 242 Cal.App.4th 634, 639 ["a dispositional order may reach both parents, including a nonoffending parent"]; see also Welf. & Inst. Code, § 361, subd. (c)(1)(A) [when court orders removal of child, it may let a nonoffending parent retain custody, subject to a plan for protecting the child from future harm].)

Similarly, there is no reason to think that the father's family maintenance services plan would have been any different if the jurisdictional findings had involved only the mother. It required him "to show his ability to supervise and protect his child from persons under the influence of alcohol and controlled substances." To that end, he was required to attend Al-Anon meetings once a week and to "attend individual counseling to learn to identify behaviors of alcohol and substance use[] and be able to keep the child protected from any person demonstrating these behaviors." He was not required to participate in substance abuse treatment, parenting classes, or any other services that were even arguably irrelevant to the risk presented by mother's own substance abuse problems.

The father relies on *In re Drake M.* (2012) 211 Cal.App.4th 754. There, the court considered the jurisdictional finding involving the father, even though the jurisdictional findings involving the mother were unquestioned. It explained: "[T]he outcome of this

8

appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent.  Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights.  Thus, although dependency jurisdiction . . . will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits."  (*Id*. at p. 763; accord, *In re Quentin H*. (2014) 230 Cal.App.4th 608, 613.)

We do not understand *Drake M.* to mean that we *must* review a jurisdictional allegation *every* time it would make the difference between a parent being offending rather than nonoffending.  Otherwise, *Drake M.* would be flatly contrary to the cases, cited above, holding that an appellate court may decline to review a jurisdictional finding against one parent if a jurisdictional finding against the other parent is supported by substantial evidence.  Rather, we understand *Drake M.* to allow review when the parent's status as offending rather than nonoffending is reasonably likely to make a difference — or, in the words of *Drake M.*, to "have far-reaching implications . . . ."  (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)

For example, whether a noncustodial parent is offending or nonoffending may determine whether that parent has a right to custody under Welfare and Institutions Code section 361.2; in such a case, a finding that the noncustodial parent is offending may be justiciable even if there are unchallenged findings that the other parent is also offending.  (*In re Christopher M*. (2014) 228 Cal.App.4th 1310, 1317.)  Similarly, the fact that a custodial parent is nonoffending can be a factor in whether the trial court decides to

9

remove the child from that parent.  (Welf. & Inst. Code, § 361, subd. (c)(1)(A).)  Here, however, the trial court decided *not* to remove the child from the father.  Finally, the father has not specified any other way in which it could matter that he is nonoffending rather than offending.

The father also argues that the jurisdictional finding could prejudice him in the family law custody proceeding.  However, as long as the dependency court has jurisdiction, the family law court will not.  (Welf. & Inst. Code, §§ 302, subd. (c), 304.)  And "the juvenile court's adjudication of particular issues in a dependency proceeding does not bar a family court from considering factually identical issues once dependency jurisdiction has terminated."  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 7:61, p. 7-17; see also *In re Carissa G.* (1999) 76 Cal.App.4th 731, 736.)[2]

Next, the father argues that he would be prejudiced in the following scenario: "[T]he mother is ordered returned to live with [the f]ather, then she relapses and uses drugs.  The Department could file a [Welfare and Institutions Code] section 387 supplemental petition alleging he previously could not prevent her drug use and did not

---

[2] The very fact that we are declining to review the b-5 finding is another reason why it will not have collateral estoppel effect.  (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83-84 [when an appellate court has affirmed decision on only one of several alternative grounds given by trial court, the other grounds are not collateral estoppel].)

*again* — which is much different than if this were the first time because he allegedly already had the experience and so should have known."

This conclusion does not follow. If the Department files a supplemental petition, the issue will be whether the previous disposition has been effective in the protection of the child. (Welf. & Inst. Code, § 387, subd. (b).) "[T]he agency must show by 'clear and convincing evidence . . . [t]here is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor' if left in parental custody 'and there are no reasonable means by which the minor's physical health can be protected without removing the minor from [parental] physical custody.' [Citations.]" (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077.) Thus, the purpose of the proceeding is not to rehash past fault, but rather to determine whether the child is currently safe.

The father's "experience" will be the same, regardless of whether he is deemed offending or nonoffending. He saw what he now concedes (albeit in hindsight) were signs of drug use by the mother. She attempted to explain them away; she assured him that she was not using drugs. Now he knows that her assurances were untrue. Moreover, now he is participating in a family maintenance services plan designed to teach him how to recognize the signs of substance abuse and how to protect a child against a substance abuser. The juvenile court will evaluate his ability to protect the child against that factual background, not against any past jurisdictional findings. Thus, we see no way that that the b-5 finding will prejudice him.

11

Finally, the father argues that an unsupported jurisdictional allegation should *never* be allowed to stand: "It is important for the juvenile court to maintain [its] reputation by making accurate findings. Otherwise, the system loses credibility and will be mistrusted by the public. If the court is allowed to let a false allegation remain in the records as true, that is a miscarriage of justice." *In re I.J.*, *supra*, 56 Cal.4th 766, however, is controlling Supreme Court authority, and it bars us from accepting this argument.

We therefore conclude that the father's contention is not justiciable.

III

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.