Filed 12/27/21  In re Leann G. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LEANN G., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>J. T.,<br><br>　　Defendant and Appellant. | A162023<br><br>(Sonoma County<br>Super. Ct. No. DEP-6104) |

Leann G. was declared a dependent after the juvenile court found her father, J.T. (Father) failed to provide adequate dental care, resulting in multiple cavities and teeth in need of extraction, an infection, and a risk that she would suffer sepsis.  The court placed her in Father's custody and gave the Sonoma County Human Services Department (the Department) exclusive authority over her dental care.  Father challenged the jurisdictional and dispositional orders, and on August 30, 2021 a different panel of this division affirmed, finding the evidence sufficient to support the juvenile court's findings.  (*In re L.G.* (Aug. 30, 2021, A161341) [nonpub. opn.]; we take judicial notice of the record and opinion in case No. A161341.)

1

The Department filed a supplemental petition (Welf. & Inst. Code, § 387)[1] in November 2020 alleging Father did not bring Leann to appointments to address her urgent dental needs, and the next month amended it to allege his "volatile, aggressive, and evasive behavior" placed Leann at risk of harm in his care. The juvenile court sustained the supplemental petition and removed Leann from Father's custody. Father challenges the sufficiency of the evidence to support the court's findings. We shall affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Prior Appeal—Jurisdiction and Disposition

The facts leading up to the jurisdictional and dispositional orders are set forth in *In re L.G.*, and we will not repeat them in detail here. Briefly, Leann did not see a dentist until she was five; when she did so in the summer 2019, the dentist determined she had six cavities and three teeth in need of extraction. Father did not arrange for her teeth to be treated, believing the cavities "would just get infected and fall out on their own." By January 26, 2020, Leann had a swollen cheek as a result of an abscessed tooth; Father's lack of cooperation caused the cancellation of two appointments to extract the tooth, although the dental surgery center concluded she could develop sepsis if her teeth were not treated.

Father refused to discuss Leann's dental care with the Department and failed to attend a team decision-making meeting scheduled for February 13, 2020, and a few days later the Department filed a dependency petition (§ 300) alleging Leann had suffered or faced a substantial risk of physical harm or illness due to Father's failure to provide proper dental care.

---

[1] All statutory references are to the Welfare and Institutions Code.

The Department reported that the dental surgery center was willing to treat Leann on condition that Father be ordered to stay away, due to the " 'eruptive anger' " he had displayed in the office. Father reportedly scheduled an appointment with another dentist for April 2020. On July 13, Leann had an emergency procedure on an infected tooth. Later that month, her dentist discovered she now had cavities in 11 teeth, and an appointment to extract an infected tooth was scheduled.

The juvenile court sustained the petition on August 14, 2020, citing, among other things, Father's "long-standing refusal to cooperate with the [D]epartment in any way."

In August 2020, the dentist was unable to treat Leann because, despite the use of nitrous oxide, she screamed and blocked her mouth with her hands, and she was referred "to UCSF and Oakland Children's Hospital." Father took Leann to a dental appointment in Oakland in early September and advocated for the use of nitrous oxide. An appointment was scheduled for September 25.

At the September 15, 2020 dispositional hearing, the court noted the worsening condition of Leann's teeth and Father's failure to obtain dental care adequate to address her dental health. Under the dispositional order, Leann remained in Father's custody with family maintenance services and the court gave the Department authority to make decisions regarding Leann's dental care. Father appealed the jurisdictional and dispositional orders, and on August 30, 2021 this court affirmed them.

## II. Current Appeal—Supplemental Petition

### *Procedural Background*

The Department filed a supplemental petition on November 9, 2020 alleging Father continued to fail to provide Leann, then seven years old, with

3

proper dental care, that he failed to bring her to scheduled appointments arranged through UCSF, and that neither the clinic nor the Department had succeeded in contacting Father. The petition alleged that Leann's dentist had told the Department she had several cavities that required crowns and fillings, that at least one tooth needed to be extracted, that the situation was urgent and could lead to facial swelling or an abscess that could cause pain or trouble eating or sleeping, and that the swelling had the potential to block her airways. The Department sought to have Leann removed from Father and placed in foster care.

The juvenile court detained Leann on November 10, 2020. On December 8, the Department filed an amended supplemental petition alleging in addition that Father had "demonstrated a pattern of volatile, aggressive, and evasive behavior" that put Leann at risk of serious harm and placed her in fear of him, on multiple occasions he had not allowed the Department or law enforcement to have access to Leann, he deliberately absconded with her to a motel on November 10, 2020 knowing he was to surrender her to the Department, and there had been multiple reports of "extreme aggression including yelling at Leann and his partner in the home, [and] multiple reports of throwing objects and hitting the walls while in the presence of the child, causing the child to hide in her room and be afraid of her father."

### *Evidence at Hearing on Supplemental Petition*

The Department's reports and the testimony at the December 21, 2020 contested hearing showed that Father took Leann to a dental appointment on September 25, 2020, but the clinic could not complete the work because he refused to allow anesthesia. According to her dentist, her need for treatment was "urgent, but not emergency": if not treated, the swelling could increase,

leading to blocked airways and trouble eating or sleeping. Father did not bring Leann to scheduled appointments on October 1 and 15, 2020 at which she would have received treatment to stop the progression of her cavities. The social worker sent text messages to Father on October 13 and 21, 2020 and a certified letter on October 14 asking him to contact her to set up a meeting, but he did not do so.

The social worker scheduled a dental appointment for Leann on November 3, 2020 and sent a certified letter to Father with information about the visit on October 26. The letter was delivered on October 29, but Father told the social worker he received it on November 2 or 3. On October 28, Father sent the social worker a text message giving her the number for his new phone and asking if she had his email address. Later that day, the social worker made an unannounced home visit, but he refused to tell her where Leann was, saying, " 'you have no fucking right to see my kid.' " According to the social worker, Father "[p]ossibly" asked when the next dental visit would be; she said she thought it was the third or the fourth of November, then she checked the calendar on her phone, showed him the correct date and time, and told him the appointment was November 3. The social worker offered to set up transportation to the appointment, but Father declined the offer. He asked her to confirm the time of the appointment, and she later sent him a text message with incorrect information, saying it was "Tuesday, 11/4," rather than the correct date of Tuesday, November 3. Father did not take Leann to the November 3 appointment and his cell phone was turned off and would not receive voicemail messages. The social worker asked the dental clinic to let her know if Father showed up, and the clinic never told her he had done so.

Police officers went to the home on November 4, 2020 after a neighbor called saying Father was yelling at his daughter while throwing objects and hitting walls. When they arrived, Father did not open the door in response to their knocking and announcing themselves as police, and they saw through a window that Leann was lying down and pretending to be asleep. A neighbor reported on November 11 that Father behaved unpredictably and had been heard yelling at Leann, hitting walls, and throwing objects and that Leann often cried while Father yelled obscenities at her. Leann later told the social worker that Father was " 'in a time out right now. He always gets mad and he yells a lot,' " and she would hide in her " 'tent' " on her bed when Father was yelling or her parents were fighting.

At a hearing held by video on November 10, the juvenile court ordered Leann detained, and Father left the hearing early, before the next court date was confirmed. That day, the social worker contacted Father and told him when she would pick Leann up. Father asked for an additional hour to allow Leann to say goodbye to neighbors, and the social worker agreed. When she arrived at Father's house with a police officer at the appointed time, no one was there. She made contact with Father, and he asked for more time; the social worker agreed, but he never arrived. The next day, November 11, Father's girlfriend was seen walking out of a store with Leann and told law enforcement that Father had told her the previous day (i.e., November 10, the day of the video hearing at which Leann was ordered detained) that they needed to stay somewhere else and they then got a motel room. Leann later told the social worker Father had "surprised" her with a trip to a motel when he got off the computer, packed their belongings, and told her they would stay at the motel for a month.

Leann's dentist told the social worker on November 5, 2020 that there was no state of emergency regarding her dental care but that there would be "definitely a worry" if it were put off. By early December 2020, Leann's teeth were being treated at two clinics, and the Department and Leann's caregivers were arranging to schedule further treatments, which would include at least one extraction and multiple crowns and fillings. One of the dental clinics was willing to treat her only if Father was not allowed to attend the appointment because he had threatened staff, causing them to fear for their safety.

### *Father's Testimony*

Father testified that Leann received dental treatment two or three times in August. He took her to dental visits on September 2 and 25 and discussed the possibility of two rounds of oral sedation, one for the work on the left side of Leann's mouth and one for the right side, but he was not aware of any future appointments. He did not know why the dental clinic would say appointments were scheduled for October 1 or October 15. He did not receive any emails from the social worker from the second week of October until October 27 or 28. When the social worker made the unannounced visit on October 28, Leann was at her grandmother's house. As the social worker was about to leave, Father asked if there was any information about dental visits, and she told him that an appointment was scheduled for the third or the fourth and that she would confirm the date when she returned to the office. Father denied that she showed him the correct date on her phone's calendar. On November 4, he called the dental clinic approximately four and a half hours beforehand to let them know he and Leann were on the way, and he was told the appointment had been for the previous day. He did not contact the social worker to find out what had

7

happened. He said he did not check his mail and so did not receive the certified letter with the correct information until November 5 or 6.

Father expressed concern about the effects of repeated fluoride treatments and the risk of general anesthesia rather than oral sedation, but he expressed willingness to take Leann to whatever dental appointments were necessary. He denied refusing to allow her to have general anesthesia. He denied ever saying cavities in baby teeth did not matter. He denied telling the social worker on October 28 that she had "no fucking right" to see Leann. He denied ever yelling and screaming at Leann and he was unaware of her hiding in her room or being afraid. He took Leann to the motel because he felt he had been "deceived" by the inaccurate appointment date on the social worker's text message. He denied telling his former live-in companion to go to the motel with Leann after the November 10 hearing. He denied having "anger issues."

### *Juvenile Court's Ruling*

In a December 21, 2020 order, the juvenile court sustained the allegations of the supplemental petition by clear and convincing evidence. In doing so, it expressly found that it believed the social worker when she testified she told Father the correct date of the November 3 appointment when she was at his house and that it did not believe Father's testimony that he called the clinic on the morning of November 4 to confirm the dental appointment. The court found that placement with Father had been ineffective in protecting Leann, removed her from Father's custody, and ordered reunification services for Father.

## DISCUSSION

Father contends the evidence does not support the juvenile court's removal findings. Section 387 authorizes the juvenile court to change a

8

previous order and remove a child from a current placement after a noticed hearing on a supplemental petition. (§ 387, subd. (a).) To support such an order when removing a child from a parent, there must be a showing that the current placement has not been effective in the rehabilitation or protection of the child. (§ 387, subd. (b).) "Unlike an original petition, a section 387 supplemental petition does not affect the jurisdiction of the court. However, the supplemental petition can have the same drastic result of removing a dependent child from his or her custodial parent. The standard for removal on a supplemental petition is the same as removal on an original petition: the agency must show by 'clear and convincing evidence . . . [t]here is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor' if left in parental custody 'and there are no reasonable means by which the minor's physical health can be protected without removing the minor from [parental] physical custody.' " (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077 (*Kimberly R.*), citing § 361, subd. (c)(1); accord, *In re Brianna S.* (2021) 60 Cal.App.5th 303, 312–313; *In re C.M.* (2017) 15 Cal.App.5th 376, 388.)

A removal order is proper if it is based on proof of the parent's "inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169–170.)

On appeal, we determine whether the order removing a child from parental custody is supported by substantial evidence, "view[ing] the record

in the light most favorable to the order and decid[ing] if the evidence is reasonable, credible, and of solid value." (*Kimberly R.*, *supra*, 96 Cal.App.4th at p. 1078.) We uphold a judgment supported by substantial evidence "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) We do not reweigh the evidence or exercise our independent judgment, and we bear in mind that questions of fact and credibility are for the trial court. (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 560.)

The evidence here is sufficient to support findings by clear and convincing evidence that there was a substantial danger to Leann's physical health in Father's custody and there were no other reasonable means to protect her. There was evidence that Leann's dental health had deteriorated during the dependency and endangered her health and well-being and that she urgently required remedial work on her teeth. In case No. A161341, this division upheld the assumption of jurisdiction on this basis. In the September 15, 2020 dispositional order, the juvenile court allowed Leann to remain in Father's custody while the work was performed. Nevertheless, Father refused to allow anesthesia on September 25, 2020, delaying Leann's treatment; he did not take her to appointments scheduled for October 1 and 15 to apply treatment to stop the progression of her cavities; and he neither took her to the November 3 appointment nor contacted the social worker to arrange to find out what had happened with the appointment. Father points to his testimony that he was unaware of the October appointments and that he attempted to keep the appointment that he believed—based on the social worker's mistaken text—was scheduled for November 4, but the trial court expressly told Father it did not believe him when he testified he called the

dental clinic before the appointment and that it believed the social worker when she testified she told Father the correct date in person. In the face of this conflicting evidence, we accept the juvenile court's determination of credibility. (*In re Joaquin C.*, *supra*, 15 Cal.App.5th at p. 560.) Furthermore, there was evidence Father threatened staff at the dental clinic treating Leann and, when faced with the November 10 removal order, he absconded with Leann rather than comply with the court's order. The evidence is sufficient for the juvenile court to conclude Leann's urgent dental needs were not being met in Father's care and his continuing pattern of non-compliance showed there were no reasonable means short of removal to protect her health.

Father's reliance on *In re Jasmine G.* (2000) 82 Cal.App.4th 282 does not persuade us otherwise. The appellate court there concluded a social worker's opinion that the parents lacked a " 'full understanding' " of their daughter's "adolescent 'issues' " and that they had not "sufficiently internalized proper parenting skills"—such as not using corporal punishment—did not constitute substantial evidence to support a removal finding where the parents had forsworn corporal punishment and expressed remorse for using it, attended parenting classes, and undergone therapy to improve their parenting skills, and their daughter had no fear of them. (*Id.* at pp. 284–285, 288–291.) That case, the reviewing court explained, was "remarkable for the clear and convincing evidence that it *was* safe to return [the child] to either of her parent's homes." (*Id.* at p. 288.) Not so here. Although Father testified to his willingness to obtain dental care for Leann, there is substantial evidence that when she was in his care he failed to do so despite the Department's efforts and that her physical health was at risk as a result.

## DISPOSITION

The December 21, 2020 order is affirmed.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*In re Leann G.* (A162023)